UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>NESV ICE, LLC, *et al*,[1]<br><br>Debtor. | Chapter 11<br>Case No. 21-11226 (CJP) |

## OMNIBUS MOTION FOR RULE 2004 EXAMINATIONS

Pursuant to Fed. R. Bankr. P. 2004, secured creditor, SHS ACK, LLC ("SHS") hereby respectfully moves this Court for an Order authorizing and directing the examinations of the Debtors, Ajax 5Cap NESV, LLC ("Ajax"), JBH Advisory, LLC ("JBH"),[2] Ashcroft Sullivan Sports Village Lender, LLC ("Ashcroft Sullivan"), Five Capital Management, LLC ("Five Capital Management"), David Boucher ("Boucher") and Joseph Fitzpatrick ("Fitzpatrick") and directing those parties to produce documents concerning the Debtor's financial and business affairs as permitted by Rule 2004 and as set forth in Exhibit A attached hereto.

As stated herein, SHS specifically seeks to examine these foregoing parties concerning: (i) the business and financial affairs of the Debtors, (ii) certain pre-petition transactions between

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are as follows: NESV Ice, LLC ("Ice") (1262), NESV Swim, LLC ("Swim") (5919), NESV Tennis, LLC ("Tennis") (6937), NESV Land East, LLC ("Land East") (4138), NESV Field, LLC ("Field') (5539), NESV Hotel, LLC ("Hotel") (9151), and NESV Land, LLC ("Land") (2353) (collectively referred to as the "Debtors").

[2] Ice has identified a "JBH Advisory, LLC" with an address of 62 Forge River Park Raynham, MA, 02767, in its Schedules and SOFA. However, upon review of the Massachusetts Secretary of State's website, no such entity is registered to do business in Massachusetts. SHS did locate a "JBH Ventures, Inc." which has the same address as that listed in the Ice's Schedules and is controlled by Jason B. Herbert who attend the 341 Meeting in this case. To the extent that Ice intended to refer to JBH Ventures, Inc. as a creditor and its accountant/ "controller", SHS hereby incorporates that entity into its definition of "JBH" when used herein.

themselves and the Debtors, (iii) a pending state court litigation in which Ice, Boucher, Fitzpatrick, Five Capital Management and Ajax are all defendants and specifically, the attorneys' fees owed by Ice in connection therewith, and (iv) monies purportedly loaned to Ajax by Ashcroft Sullivan, for which the Debtors' collateral has been pledged as security.

The Debtors own seven (7) parcels of land comprising approximately 130 acres located in Attleboro, Massachusetts, with one such parcel, owned by Ice, having an ice skating and recreational facility situated thereon. However, despite the ice rink being operational since November 2016, the Debtors have failed to pay their ordinary course creditors such as taxes and utilities, let alone turn a profit, and have not made any payments on their first position debt owed to SHS, since February 2020. As of the Petition Date, the amounts owed to SHS by the Debtors was well in excess of $18 million due to certain events of default dating back to March 2017. Moreover, the Debtors have fallen behind on their real estate tax obligations, owing approximately $570,000.00 to the City of Attleboro as of the Petition Date, and Ice has not paid its utilities, owing over $300,000.00 to its electric provider as of the Petition Date.

Additionally, notwithstanding that the Debtors engaged their bankruptcy counsel and financial advisors in April 2021, i.e., five (5) months prior to the Petition Date, they did not file their bankruptcy schedules and statements of financial affairs until a month after the Petition Date and on the night before their Section 341 meetings of creditors. These barebones disclosures have raised significant questions concerning the operations and financing of the Debtors, certain insider preference payments made in the weeks leading up to the Petition Date and the commingling of business transactions, assets, collateral and monies, including certain amounts owed to and payments received by attorneys and professionals, by Silberberg, Ice and/or Ajax and other insiders.

On September 27, 2021, the Debtors, through their manager Stuart Silberberg ("Silberberg"), appeared at a Section 341 Meeting of Creditors presided over by the United States Trustee's office. However, Silberberg was unable to adequately testify about, inter alia, (i) $150,000.00 that was transferred by Ice to Ajax less than a month before the Petition Date; (ii) what happened to the $7,500,000.00 invested by the Ashcroft Sullivan foreign investor group; (iii) what portion of the approximately $1,500,000.00 in attorneys' fees purportedly owed to Ashcroft Sullivan Law Firm in connection with a pending state court litigation that Ice is liable for, versus what amounts are attributable to its co-defendants; and (iv) the nature of certain pre-petition payments made to JBH and its contractual relationship, if any, with the Debtors. Indeed, the approximately three (3) hours of Silberberg's 341 testimony did little to clarify why in the months leading up to the Petition Date, Ice paid Silberberg's personal attorneys $10,000.00-$15,000.00, why JBH received a $15,000.00 retainer in or around August 2021[3] or even whether JBH, the accountant/ "controller" for Ajax and/or Ice even had a contractual agreement with Ice.

Therefore, for these foregoing reasons, SHS requests that the Court allow SHS to conduct Rule 2004 examinations of the Debtors, Ajax, JBH, Ashcroft Sullivan, Five Capital Management, Boucher and Fitzpatrick and subpoena documents therefrom in accordance with Rule 2004(c).

## NON-DEBTOR SUBJECTS OF 2004 EXAMINATIONS

1. Ajax 5Cap NESV, LLC ("Ajax"), is a limited liability company formed under the laws of Massachusetts. Ajax is the sole member of the Debtors.

2. JBH Ventures, Inc. ("JBH"), is a corporation formed under the laws of

---

[3] The principal of JBH appeared at the 341 Meeting and claimed on the record that although he had previously mis-categorized this payment as a retainer and that it was actually a payment for past services rendered to the Debtors in connection with these bankruptcy cases.

3

Massachusetts. JBH has purportedly served as an accountant/ "controller" for the Debtors and/or Ajax and received pre-petition payments from the Debtors.

3. Ashcroft Sullivan Sports Village Lender, LLC ("Ashcroft Sullivan"), is a limited liability company formed under the laws of Delaware. Ashcroft Sullivan purportedly entered into a pre-petition lending agreement with Ajax and loaned approximately $7.5 million dollars to Ajax under that agreement. Ashcroft Sullivan was granted a second position mortgage over the Debtors' real property securing its loans to Ajax. Upon information and belief, Ashcroft Sullivan is in the business of soliciting investments from foreign nationals for the purpose of those investors obtaining a United States EB-5 investor via.

4. Five Capital Management, LLC ("Five Capital Management"), is a limited liability company formed under the laws of Massachusetts. Five Capital Management is a member of Ajax and a co-defendant with Ice in a pre-petition lawsuit commenced by Construction Source Management ("CSM"), the general contractor for Ice who build the ice rink, in Massachusetts Superior Court.

5. David Boucher ("Boucher") is a Massachusetts resident who is an equity holder in and manager of Five Capital Management. Boucher is also a co-defendant with Ice in a pre-petition lawsuit commenced by CSM in Massachusetts Superior Court.

6. Joseph Fitzpatrick ("Fitzpatrick") is a Massachusetts resident who was at one time an equity holder in and manager of Five Capital Management. Fitzpatrick is also a co-defendant with Ice in a pre-petition lawsuit commenced by CSM in Massachusetts Superior Court.

**RELEVANT FACTUAL BACKGROUND**

7. On August 26, 2021, the Debtors separately filed for relief under Chapter 11 of title 11 of the United States Code (the "Petition Date"). However, the Debtors did not file their Schedules A-H ("Schedules") or Statements of Financial Affairs ("SOFAs").

8. On August 27, 2021, the Court Ordered that the Debtors file their Schedules SOFAs within fourteen (14) days, i.e., September 10, 2021. *See* ECF No. 3.

9. On September 3, 2021, the Debtors filed a motion to extend time to file their Schedules and SOFAs. *See* ECF No. 39.

10. On September 7, 2021, the Court allowed the Debtors' motion to extend time to file their Schedules and SOFAs, thereby setting the Debtors' deadline to file their Schedules and SOFAs until September 24, 2021. *See* ECF No. 46.

11. On September 24, 2021, the Debtors again moved for an additional fourteen (14) days to file their Schedules and SOFAs, despite the fact that their Section 341 Meetings of Creditors were scheduled to begin on September 27, 2021. *See* ECF No. 78.

12. SHS Objected to this Motion. *See* ECF No. 79

13. On September 24, 2021, the Court denied this request and ordered the Debtors to file their Schedules and SOFAs within seven (7) days. *See* ECF No. 80.

14. On September 26, 2021, the Debtors filed their Statements and SOFAs. *See* ECF Nos. 83-29.

15. On September 27, 2021, the Debtors, through their manager Silberberg, appeared for their Section 341 Meeting of Creditors (the "341 Meeting").

16. None of the Debtors provided a valuation for their real property in their Schedule A/B.[4] Silberberg was further unable to provide actual valuations of the Debtors' real property during the Section 341 Meeting. He confirmed that no appraisal had been ordered concerning these properties but claimed that the Debtors were contemplating ordering an appraisal. When

---

[4] With the exception of Ice, the Debtors' only assets are the real properties located in Attleboro, Massachusetts, which the Debtor has not even attempted to value.

5

pressed to provide a valuation of the Debtors' real property, Silberberg reluctantly gave his estimated valuations but claimed that it was impossible to accurately value these properties without first obtaining planning permission from the City of Attleboro for a "master plan".

17. During the 341 Meeting, Silberberg was questioned by counsel for the United States Trustee as well as counsel for SHS. However, he was not able to adequately testify about certain transfers by and between Ice and Ajax during the ninety (90) day pre-petition look back period. Nor was Silberberg able to sufficiently testify about how the Debtors and/or Ajax used the $7.5 million dollars that was loaned to Ajax by Ashcroft Sullivan.

18. Furthermore, during the 341 Meeting, Silberberg admitted that his personal attorneys' fees had been paid by Ice, "through" Ajax, in the months leading up to the Petition Date. Silberberg also gave conflicting testimony concerning whether or not Ice had given a pre-petition retainer to its accountant and "controller" JBH or whether a $15,000.00 payment to JBH was made on account of past services purportedly performed in connection with these bankruptcy cases.

19. Moreover, Silberberg could not identify which entity, i.e., Ajax or Ice or both, has actually contracted with JBH or who is liable for payment of his fees.

20. Importantly, during the 341 Meeting, Silberberg was not able to account for all of a $150,000.00 transfer from Ice to Ajax on August 5, 2021, and instead claimed that this sum was used to "reimburse" Ajax for monies that it had previously paid on Ice's behalf. When questioned what advances Ajax was being reimbursed for, Silberberg was not able to provide a fulsome explanation or accounting despite being the manager for both entities.

21. During the 341 Meeting, Silberberg also admitted that the $1.5 million listed on Ice's Schedule E as owing to Ashcroft Sullivan Law do not actually reflect the attorneys' fees

6

owed by Ice to that law firm. These fees were purportedly incurred in connection with a state court litigation commenced by CSM, the general contractor who build the ice rink, seeking to recover approximately $5 million for services allegedly rendered to Ice. Five Capital Management, Ajax, Silberberg, Fitzpatrick and Boucher were also named as defendants in that action and were all initially represented by the Ashcroft Sullivan Law Firm.

22. During the 341 Meeting Silberberg confirmed that this approximately $1.5 million in fees actually represents the total amount owing to the Ashcroft Sullivan Law Firm by Silberberg, Ajax, Five Capital Management Fitzpatrick, Boucher and Ice.[5] Silberberg was not able to provide any further information concerning the actual amount of fees that Ice is liable to pay the Ashcroft Sullivan Law Firm and what portion is attributable to its co-defendants in that action. Silberberg also claimed that prior to filing Ice's Schedules and SOFA, the Ashcroft Sullivan Law Firm did in fact provide a detailed report of its billing as its related to each defendant in the CSM case, however, Silberberg was not able to testify about why that information was not included in Ice's Schedules.

23. In response to a question from counsel for the United States Trustee about Ice's transfer or "reimbursements" to insiders of Ice during the year prior to the Petition Date, Silberberg vaguely testified at the 341 Meeting concerning a transaction whereby he allegedly "loaned" about $10,000.00- $15,000.00 to Ajax and Ajax in turn "loaned" this money to Ice to purchase equipment. Silberberg went on the testify that this money was purportedly "reimbursed" to himself and/or Ajax, notwithstanding the fact that he also testified that he has not received a reimbursement for his expenses from Ice in years. Silberberg was not able to

---

[5] Silberberg testified that Fitzpatrick was a former investor in Five Capital Management and Boucher is a principal of that entity. Silberberg further confirmed that Five Capital Management is a member of Ajax.

7

elaborate on this transaction, nor was he able to provide the date that this transaction occurred. Counsel for the Debtors indicated on the record that this transaction occurred sometime prior to the one- year look back period from the Petition Date.

## ARGUMENT

I. **APPLICABLE LAW TO RULE 2004 MOTIONS**

Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(b). Rule 2004(b) further provides that the scope of such examination may:

> relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

Fed. R. Bankr. P. 2004(b).

Courts have held that "[t]he permissible scope of a Rule 2004 examination is 'unfettered and broad' and 'a large latitude of inquiry should be allowed in the examination of persons closely connected with the bankrupt in business dealings, or otherwise, for the purpose of discovering assets and unearthing frauds, upon any reasonable surmise that they have assets of the debtor…'" *In re GHR Energy Corp.*, 33 B.R. 451, 453-54 (Bankr. D. Mass. 1983) (citing cases); *see also In re Drexel Brunham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("The understanding generally acceptable today is that the scope of a Rule 2004 examination is very broad. Rule 2004 discovery is broader than discovery under the Federal

8

Rules of Civil Procedure. And …can be legitimately compared to a fishing expedition."). "The clear intent of Rule 2004…is to give parties in interest an opportunity to examine individuals having knowledge of the financial affairs of the debtor in order to preserve the rights of creditors." *In re GHR Cos., Inc.*, 41 B.R. at 660. "Examinations under Rule 2004 are allowed for the 'purpose of discovering assets and unearthing frauds'". *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (quoting *In re GHR Energy Corp.*, 33 B.R. at 453, citing *In re Foerst*, 93 F.190, 191 (S.D.N.Y. 1989)).

Rule 2004 requires that the Court balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production. *In re Drexel Burnham Lambert Grp.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). "Good cause may ordinarily be sustained by a claim that the requested documents are necessary to establishment of the moving party's claim or that denial of production would cause undue hardship or injustice." *Id.* "[Meetings of creditors] are not to be considered as substitutes for examinations under Rule 2004." *In re Hammond*, 140 B.R. 197, 202 (S.D. Ohio 1992).

## II. THE COURT SHOULD ALLOW SHS TO CONDUCT ITS REQUESTED 2004 EXAMINATIONS AND OBTAIN DOCUMENTS

The Court should allow SHS to conduct Rule 2004 examinations of the Debtors, Ajax, JBH, Ashcroft Sullivan, Five Capital Management, Boucher and Fitzpatrick because the testimony during the 341 Meeting indicates that these persons and entities are all in possession of information concerning the business and financial affairs of the Debtors that has not previously been disclosed. Specifically, SHS seeks to uncover, inter alia, the circumstances surrounding numerous inter-company transactions by and between the Debtors, Silberberg and Ajax that occurred in the months leading up to the Petition Date.

Based on the testimony given during the 341 Meeting, it appears that the Debtors have been operated as a single enterprise, along with the non-debtor Ajax whereby the Debtors' expenses, including payment of real estate taxes, attorneys, accounts and other professionals have been paid by Ajax and/or Silberberg and they have "reimbursed" or "repaid" themselves for those expenses. Additionally, the Debtors have apparently been paying for Silberberg's personal attorneys, however the circumstances of this arrangement have not been disclosed by the Debtors.

Moreover, the Debtors were not able to adequately account for the $7.5 million that was purportedly loaned by Ashcroft Sullivan to Ajax, which loans are secured by the second position mortgages recorded on the Debtors' property. Instead, Silberberg testified that this money was used to pay real estate taxes of the Debtors and to pay for "operations at the holding company level", i.e., Ajax. When questioned by counsel for the United States Trustee, Silberberg vaguely explained that those "operations" included the "furtherment of real estate development".

Therefore, for these foregoing reasons the Court should allow SHS to conduct the Rule 2004 examinations as requested herein and further require the Debtors, Ajax, JBH, Ashcroft Sullivan, Five Capital Management, Boucher and Fitzpatrick to produce the documents set forth in Exhibit A attached hereto.

## CONCLUSION

Wherefore, secured creditor SHS ACK, LLC respectfully requests that the Court GRANT this Motion, ALLOW SHS to conduct Rule 2004 examinations of the Debtors, Ajax, JBH, Ashcroft Sullivan, Five Capital Management, Boucher and Fitzpatrick and ORDER those parties to produce the documents to SHS as requested herein and GRANT any other or further relief as the Court deems just and proper.

        Respectfully Submitted,

        SHS ACK, LLC

        By its attorneys,

        /s/ *Thomas H. Curran*
Thomas H. Curran, BBO# 550759
tcurran@curranantonelli.com
Peter Antonelli, BBO# 661526
pantonelli@curranantonelli.com
Christopher Marks BBO# 705612
cmarks@curranantonelli.com
Curran Antonelli, LLP
Ten Post Office Square, Suite 800 South
Boston, MA 02109
Telephone: (617) 207-8670
Fax: (617) 850-9001

Dated: September 28, 2021

## CERTIFICATE OF SERVICE

I, Thomas H. Curran, hereby certify that on this 28th day of September 2021, a copy of the foregoing was filed electronically. Notice of this will be sent by e-mail to all parties by operation of the Court's electronic filing system and/or by first class mail postage pre-paid as set forth below. Parties may access this filing through the Court's system.

Ajax 5Cap NESV, LLC
c/o National Registered Agents, Inc.
155 Federal St. STE. 700
Boston, MA 02110

JBH Ventures Inc.
62 Forge River Park
Raynham, MA, 02767

Five Capital Management, LLC
1395 Commerce Way
Attleboro, MA 02703

11

David Boucher
21 Courtney Place
North Attleboro, MA 02760

Joseph Fitzpatrick
309 Richardson Ave.
Attleboro, MA 02703

                                              */s/ Thomas H. Curran*
                                              Thomas H. Curran