## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## (EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>NESV ICE, LLC, *et al.*[1],<br><br>Debtors. | Chapter 11<br>Case No. 21-11226-CJP<br><br>Jointly Administered |

## APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF JLL VALUATION & ADVISORY SERVICES, LLC AS APPRAISERS FOR THE DEBTORS AND DEBTORS-IN-POSSESSION
### (*Expedited Determination Requested*)

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby

file this application (the "Application") pursuant to 11 U.S.C. §§ 327 and 328, Fed.

R. Bankr. P. 2014 and 6005, and MLBR 2014-1 seeking entry of an order

substantially in the form attached as **Exhibit A**, (i) authorizing the Debtors to

employ JLL Valuation & Advisory Services, LLC ("JLL") to provide appraisal and

valuation services pursuant to the terms and conditions of the attached engagement

letter; (ii) approving the terms of JLL's retention and employment, including the fee

structure and indemnification provisions described in the engagement letter, as

modified by the Proposed Order; and (iii) granting certain related relief. In support

of this Application, the Debtors rely on the Declaration of Joseph Miller (the "Miller

Declaration"), which is attached as **Exhibit B**, and respectfully state as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are as follows: NESV Ice, LLC (1262), NESV Swim, LLC (5919), NESV Tennis, LLC (6937), NESV Land East, LLC (4138), NESV Field, LLC (5539), NESV Hotel, LLC (9151), and NESV Land, LLC (2353).

## Jurisdiction

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) (2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Massachusetts Local Bankruptcy Rules ("MLBR").

## Background

3.      On August 26, 2021 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (Eastern Division).

4.      The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee, examiner, or official committee has been appointed in these cases.

6.      New England Sports Village (the "Village") is a planned athletic, entertainment, and hospitality complex located on a 138.3-acre site in Attleboro,

Massachusetts.

7.      Each of the Debtors owns a parcel of real estate that, together, comprise the 138.3-acre site. NESV Ice, LLC ("Ice"), which owns and operates the ice facility on a 12.4-acre parcel, is the only operating company. The other Debtors own the remaining parcels.

## Relief Requested

8.      By this Application, the Debtors seek entry of an order pursuant to sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 6005, and MLBR 2014-1 and 2016-1 authorizing the Debtors to retain and employ JLL to provide appraisal and valuation services in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and JLL dated October 15, 2021 (the "Engagement Letter"), a copy of which is annexed as Exhibit 1 to Exhibit A attached hereto. The Debtors also request that the Court approve the terms of JLL's retention and employment, including the fee structure and indemnification provisions described in the Engagement Letter, as modified by the Proposed Order.

9.      Appraising the value of the Debtors' real estate and ice facility is critical to their short and long-term reorganization efforts. Because time is of the essence, the Debtors request that the Court consider the Application on an expedited basis.[2] Parties in interest are on notice of the Debtors' plans to engage

---

[2] The Court has scheduled an evidentiary hearing for February 4, 2022, at which time the Debtors intend to present expert testimony and evidence concerning the value of the Debtors' real estate, and

JLL and the general terms of the proposed engagement, which were previously described in the Debtors' Motion to Confirm Their Authority to Employ and Compensate Ordinary Course Professionals and to Establish Related Procedures (Doc. No. 120).

## JLL's Qualifications

10.     The Debtors believe that JLL is well qualified to serve as their appraisers in these chapter 11 cases. JLL is a world leader in real estate services, with over 1,700 valuation advisory professionals worldwide. JLL is part of a global network comprised of experienced, licensed, qualified appraisers who use local insights and their years of expertise to deliver accurate, reliable, and prompt valuations. JLL's professionals provide valuation and appraisal services across a variety of real estate holdings, consistent with the Uniform Standards of Professional Practice of the Appraisal Institute.

11.     JLL's services are necessary to advance the Debtors' chapter 11 cases, support the Debtors' negotiations with creditors, and to enable the Debtors to successfully reorganize. JLL is well qualified to provide the requested services in a cost-effective and timely manner.

## Services to be Provided

12.     Subject to further order of the Court and consistent with the Engagement Letter, JLL will, among other things:

a)  Conduct a physical inspection of the Debtors' properties;

---

ordered the Debtors to deliver any valuation report on which they intend to rely by no later than ten days before that hearing, which is January 25, 2022.

b) Prepare an appraisal report (the "<u>Report</u>") with respect to the Debtors' real properties that, among other things, provides "as is" market value of the existing ice rink, "as is" market value of the land under current zoning ordinance and allowances, and an "as is" market value of the land taking into account the Debtors' respective as-proposed uses, assuming required zoning approvals are granted; and

c) Follow Uniform Standards of Professional Appraisal Practices by the Appraisal Foundation, the Code of Professional Ethics and Standard of Professional Appraisal Practice of the Appraisal Institute.

13.     If necessary, the Debtors may request that JLL testify regarding its opinions of value and provide related services as an expert witness.

## Professional Compensation

### A.     *Appraisal Services*

14.     The fee for the Report is a flat fee of $22,500 (the "<u>Flat Fee</u>") ($15,000 for the land and $7,500 for the ice rink). This fee includes the expenses related to the engagement, and there will be no added charges for travel, delivery fees, or report reproduction costs. JLL will deliver a .pdf copy of the Report to the Debtors, and two hard copies of the Report free of charge.

15.     Appraisers and valuation consultants do not typically charge for their services on an hourly basis except for testimony and similar litigation services, and it is not JLL's general practice to keep detailed time records similar to those customarily kept by attorneys. This practice is consistent with Fed. R. Bankr. P. 6005, which provides "The order of the court approving the employment of an appraiser or auctioneer *shall fix the amount* or rate of compensation." The Debtors believe that this fee configuration is reasonable because the structure of the compensation contemplated under the Engagement Letter is only partially based on

the time expended by JLL. JLL's rates are consistent with and typical of compensation arrangements entered into by JLL and other comparable firms that render similar services under similar circumstances. The Debtors believe that JLL's rates are reasonable, market-based, and designed to compensate JLL fairly for its work and to cover fixed and routine overhead expenses.

16.     Because the amount of JLL's compensation for its appraisal services will be fixed at the Flat Fee, the Debtors request that JLL not be required to keep time records for producing the appraisals or to file monthly or interim fee applications for such work. Rather, the Debtors request that, upon completion of all of the appraisal services identified in the Engagement Letter and delivery of the Report to the Debtors, JLL be permitted to apply the retainer in payment of the Flat Fee.

### B.     *Expert Services*

17.     In connection with any work beyond the appraisal services contemplated by the Engagement Letter, such as providing consulting services or testimony in connection with the bankruptcy cases, JLL will be required to maintain time records and follow ordinary procedures for applying for payment, including in accordance with the Court's Administrative Order on Motion for Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses Of Professionals (Doc. No. 133).

18.     For expert services and testimony, JLL will charge the Debtors on an hourly basis, at its prevailing rate of $600, and request reimbursement for related

costs and expenses. JLL reserves the right to demand that the Debtors provide it with a reasonable general retainer (which will be subject to prior Court approval) before providing any such expert services.[3]

## C. Indemnification

19. As a material part of the consideration for which JLL has agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions contained in the Engagement Letter at Sections 6 and 14.2. Notwithstanding the foregoing, the Debtors and JLL have agreed that before the Debtors sign the Engagement Letter, during the pendency of these chapter 11 cases those provisions shall be modified as follows:

(a) JLL shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

(b) the Debtors shall have no obligation to indemnify JLL, or provide contribution or reimbursement to JLL, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from JLL's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of JLL's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to JLL's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which JLL should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Application and the Proposed Order;

---

[3] The Debtors are in discussions with its debtor-in-possession lender, Shubh Patel LLC, about related financing.

(c)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, JLL believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under an Engagement Letter (as modified by this Application and the Proposed Order), including without limitation the advancement of defense costs, JLL must file an application therefore in this Court, and the Debtors may not pay any such amounts to JLL before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by JLL for indemnification, contribution and reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify JLL. All parties in interest shall retain the right to object to any demand by JLL for indemnification, contribution or reimbursement; and

(d)     The Court and the United States Trustee have the right to review any indemnification award and related fees or expenses for reasonableness.

The indemnification provisions were negotiated by the Debtors and JLL at arm's length and in good faith, and, viewed in conjunction with the other terms of JLL's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors.

## Compensation Previously Received by JLL from the Debtors

20.     In contemplation of its retention by the Debtors, JLL received a $22,500 retainer on or about August 26, 2021, paid by Ajax 5 Cap NESV, LLC, using funds provided to it by NESV Ice, LLC on August 5, 2021. To date, JLL has provided no services on behalf of the Debtors, and the Debtors do not owe JLL any amounts for services rendered before the Petition Date.

## JLL's Disinterestedness

21.     To the best of the Debtors' knowledge and as disclosed herein and in

the Miller Declaration: (a) JLL is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) JLL has no connection to the Debtors, their creditors or their related parties.

22.     JLL will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, JLL will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### Authority for Requested Relief

23.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, *appraisers*, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

U.S.C. § 327(a).

24.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer." 11 U.S.C. § 328(a).

25.     Bankruptcy Rule 2014(a) requires that an application for retention

include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.

      26.    Finally, MLBR 2014-1 states as follows:

> An Application of a debtor (other than a chapter 7 debtor), debtor in possession, estate representative, or committee to employ any professional person, including an attorney, accountant, appraiser, broker, auctioneer, consultant or agent, shall include all of the information required to be provided by Fed. R. Bankr. P. 2014(a). In addition, in the statement accompanying the application, the person to be employed shall make the following representations and disclosures

> (1) Neither I nor any member of my firm holds or represents any interest adverse to the estate . . .

> (2) My and my firm's connects with the debtor, any creditor, or other party in interest, their respective attorneys and accountants are as follows:_ _____ I am and each member of my firm is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14) . . .

> (3) I have not agreed to share with any persons (except members of my firm) the compensation to be paid for the services rendered in this case, except as follows:

> (4) I have received a retainer in this case in the amount of $_____, which sum, upon information and belief, was generated by the debtor from: __

> (5) I shall amend this statement immediately upon my learning that (A) any of the within representations are incorrect or (B) there is any change of circumstance relating thereto

> (6) I have reviewed the provisions of [MLBR] 2016-1.

The Miller Declaration comports with MLBR 2014-1.

27.     Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and MLBR to request entry of an order authorizing the Debtors to retain and employ JLL in these chapter 11 cases.

## Notice

28.     Notice of the Application has been given to: (i) the United States Trustee; (ii) SHS ACK, LLC; (iii) Ashcroft Sullivan Sports Village Lender, LLC (iv) the creditors holding the twenty (20) largest claims against each Debtor's estate; (v) any party requesting notice in these Chapter 11 cases; and (vi) all known taxing authorities that have claims against the Debtors. The Debtors submit that in light of the nature of the relief requested such notice is appropriate under the circumstances of this case and that no further notice is required.

## No Prior Request

29.     Although the Debtors previously requested permission to employ JLL as an ordinary course professional, which request was denied, no previous application for the relief sought herein (*e.g.,* employing JLL as a professional pursuant to 11 U.S.C. § 327(a)) has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached as **Exhibit A**: (i) authorizing the Debtors to employ and retain JLL as their appraisers; and (ii) granting such other and further relief as is just and necessary.

Respectfully submitted,

NESV Ice, LLC, NESV Swim, LLC, NESV Tennis, LLC, NESV Land East, LLC, NESV Field, LLC, NESV Hotel, LLC, and NESV Land, LLC

By their attorneys,

*/s/ Joseph M. Downes III*
Joseph M. Downes III (BBO No. 655853)
William S. McMahon (BBO No. 651832)
Downes McMahon LLP
215 Lewis Wharf
Boston, MA 02110
(617) 600-6430
jdownes@dmlawllp.com

Dated: January 4, 2022

# EXHIBIT A

(Proposed Order)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (EASTERN DIVISION)

|  |  |
|---|---|
| In re: | Chapter 11 |
| NESV ICE, LLC, *et al.*[1], | Case No. 21-11226-CJP |
| Debtors. | Jointly Administered |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF JLL VALUATION & ADVISORY SERVICES, LLC AS APPRAISERS FOR THE DEBTORS AND DEBTORS-IN-POSSESSION

Upon the application (the "<u>Application</u>") of the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>") for entry of an order authorizing the Debtors to retain and employ JLL Valuation & Advisory, LLC ("<u>JLL</u>") as their appraisers pursuant to sections 327(a) and 330 of the Bankruptcy Code,[4] Rules 2014(a) and 6005 of the Bankruptcy Rules and Rules 2014-1 and 2016-1 of the Massachusetts Local Bankruptcy Rules ("<u>MLBR</u>"), and it appearing that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409; and the Court having reviewed the

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are as follows: NESV Ice, LLC (1262), NESV Swim, LLC (5919), NESV Tennis, LLC (6937), NESV Land East, LLC (4138), NESV Field, LLC (5539), NESV Hotel, LLC (9151), and NESV Land, LLC (2353).

[4] Capitalized terms not otherwise defined shall have the meanings ascribed to then in the Application.

Application, the Declaration of Joseph Miller, a Managing Director at JLL (the

"Miller Declaration"); and the Court being satisfied based on the representations

made in the Application and the Miller Declaration that (a) JLL does not hold or

represent an interest adverse to the Debtors' estates and (b) JLL is a "disinterested

person" as defined in section 101(14) of the Bankruptcy Code and MLBR 2014-1;

and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1.      The Application is granted.

2.      The Debtors are authorized to retain and employ JLL as their

appraisers in accordance with the terms and conditions set forth in the Application

and in that certain engagement letter annexed hereto as *Exhibit 1* (the

"Engagement Letter").

3.      JLL is authorized to render professional services to the Debtors as

described in the Application and the Engagement Letter. JLL will, without

limitation:

a) Conduct a physical inspection of the Debtors' properties;

b) Prepare an appraisal report (the "Report") with respect to the Debtors' real properties that, among other things, provides "as is" market value of the existing ice rink, "as is" market value of the land under current zoning ordinance and allowances, and an "as is" market value of the land as proposed, assuming the required zoning approvals are granted;

c) Follow Uniform Standards of Professional Appraisal Practices by the Appraisal Foundation, the Code of Professional Ethics and Standard of Professional Appraisal Practice of the Appraisal Institute (collectively, the "**Appraisal Services**"); and

d) If necessary, the Debtors may request that JLL testify regarding its opinions of value and provide related services as an expert

witness (the "**Expert Services**").

4. For Appraisal Services, JLL's compensation shall be fixed at $22,500 (the "Flat Fee"). JLL shall not be required to keep time records for producing the appraisals or to file monthly or interim fee applications for such work. Upon completion of all of the appraisal services identified in each Engagement Letter and delivery of the Report to the Debtors, JLL shall be permitted to apply the retainer as payment of the Flat Fee.

5. For any Expert Services, JLL shall be required to maintain time records and follow ordinary procedures for applying for payment, including in accordance with the Court's Administrative Order on Motion for Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses Of Professionals (Doc. No. 133), and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and MLBR.

6. Any request by JLL for indemnification from the Debtors, and all related provisions in the Engagement Letter, shall be modified in in accordance with the Application.

7. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

9. The Court retains jurisdiction with respect to all matters arising from

or related to the implementation of this Order.

Dated:                    , 2022

_____
Christopher J. Panos
United States Bankruptcy Judge

*Exhibit 1*
*Engagement Letter*



Zach Bowyer
Managing Director
One Post Office Square, #2600
Boston, MA 02109
(617) 316-6595
Zach.bowyer@am.jll.com

October 15, 2021

Stuart Silberberg
NESV Ice, LLC
1395 Commerce Way
Attleboro, MA 025703
ssilberberg@ajaxpartners.com
(212) 237-2877

C/O: NESV Ice, LLC; NESV Swim, LLC; NESV Land, LLC; NESV Land East, LLC; NESV Hotel, LLC; NESV Tennis, LLC; and NESV Field, LLC

RE:  Valuation Services for the Property: Attleboro Land & Rink (see below)

Dear Mr. Silberberg,

JLL Valuation & Advisory Services, LLC (JLL VA) is pleased to provide this proposal and engagement letter for valuation services regarding the Property.

| | |
|---|---|
| PROPERTY IDENTIFICATION: | Attleboro Land & Rink |
| PROPERTY TYPE: | Land & Special Use (Ice Rink) |
| INTEREST APPRAISED: | Fee Simple |
| PURPOSE: | Market Value |
| INTENDED USERS: | NESV Ice, LLC ; NESV Swim, LLC; NESV Land, LLC; NESV Land East, LLC; NESV Hotel, LLC; NESV Tennis, LLC; and NESV Field, LLC [NO OTHER USERS ARE INTENDED BY JLL VALUATION & ADVISORY SERVICES, LLC.] |
| INTENDED USE: | Internal valuation and potential litigation |
| | It is acknowledged that: |
| | 1.  The debtors are in Bankruptcy |
| | 2.  There is a pending CSM lawsuit |
| | 3.  There is a mechanics lien on the NESV Ice, LLC property |
| VALUES PROVIDED: | As Is Market Value of the existing ice rink, As Is Market Value of the land under current zoning ordinance and allowances, and an As Is Market Value of the land as proposed, assuming the required zoning approvals are granted. |
| APPRAISAL STANDARDS: | Uniform Standards of Professional Appraisal Practice (USPAP) by the Appraisal Foundation, the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute |
| PROPERTY INSPECTION: | JLL VA  will conduct a physical inspection of the Property |
| VALUATION APPROACHES: | All applicable approaches to value. |
| REPORT OPTION: | Appraisal Report |
| FEE: | $22,500 ($15,000 for the land, $7,500 for the ice rink) |
| EXPENSES: | The fee includes the expenses related to this engagement. There will be no added charges for travel, delivery fees or report production costs. |



RETAINER:            A full retainer equal to $22,500 is required.
FINAL PAYMENT:       The fee is considered earned upon delivery of the first report.
DELIVERY DATE:       25 business days from receiving the executed engagement letter and retainer
                     (if applicable). Delays in obtaining the data needed to complete this
                     assignment or delays in accessing the property for inspection (if applicable)
                     may result in delays in the date our analysis is completed and delivered.
DELIVERY METHOD:     A PDF of the report(s) will be delivered to the client contact identified on this
                     engagement letter. Two hard copies are available at client's request.
                     Additional copies can be requested at $150 per copy.

This engagement letter is subject to the General Terms and Conditions attached to this letter as Exhibit A, the Statement of Assumptions and Limiting Conditions attached to this letter as Exhibit B.

Upon your acceptance of this Agreement, we will forward our information request and coordinate a property inspection, if applicable. We will update you within 48 hours of receiving the signed engagement to confirm our information request was provided and a property inspection is scheduled, if applicable.

We appreciate the opportunity to be of service. Providing white-glove service and the least amount of disruption at the property is our top priority.

Sincerely,

**JLL VALUATION & ADVISORY SERVICES, LLC**

Zach Bowyer
Managing Director
(617) 316-6595
Zach.bowyer@am.jll.com

[Remainder of page left blank intentionally]


**AGREED AND ACCEPTED BY:**

NESV Ice, LLC

| | |
|---|---|
| _____ | _____ |
| Signature | Date |
| | |
| _____ | _____ |
| Printed Name | Email Address |
| | |
| _____ | _____ |
| Title | Phone Number |

| Identification of the Property | | | | | | |
|---|---|---|---|---|---|---|
| Entity | Parcel | Address | City | State | Zip Code | Use |
| NESV Field, LLC | 0154-0011 | Commerce Way | Attleboro | MA | 02703 | Vacant Land |
| NESV Hotel, LLC | 0134-0022 | Commerce Way | Attleboro | MA | 02703 | Vacant Land |
| NESV Land East, LLC | 0134-0023 | 1395 Commerce Way | Attleboro | MA | 02703 | Vacant Land |
| NESV Land East, LLC | 0154-0002 | Tiffany Street | Attleboro | MA | 02703 | Vacant Land |
| NESV Land East, LLC | 0062-0192 | County Street | Attleboro | MA | 02703 | Vacant Land |
| NESV Land, LLC | 0154-0013 | Commerce Way | Attleboro | MA | 02703 | Vacant Land |
| NESV Swim, LLC | 0134-0024 | Commerce Way | Attleboro | MA | 02703 | Vacant Land |
| NESV Tennis, LLC | 0134-0025 | Commerce Way | Attleboro | MA | 02703 | Vacant Land |
| NESV ICE, LLC | 0155-0005B | 877 County Street | Attleboro | MA | 02703 | Ice Rink |

[Remainder of page left blank intentionally]


agreement, other than Loss that is found by a court of competent jurisdiction to result from your negligence or willful misconduct.

### 7. EXCLUSIONS OF, AND LIMITATIONS ON, LIABILITY

**7.1** EACH OF JLL AND THE CLIENT WAIVES ANY CLAIMS AGAINST EACH OTHER FOR LOSS OF PROFITS, CONSEQUENTIAL, PUNITIVE, EXEMPLARY OR SIMILAR DAMAGES IN CONNECTION WITH THE AGREEMENT. IN NO EVENT SHALL JLL'S LIABILITY IN CONNECTION WITH THE AGREEMENT EXCEED THE FEE PAID TO JLL HEREUNDER.

### 8. TERMINATION

**8.1** Either of us may terminate the agreement without reason by giving 30 days' advance written notice to the other.

**8.2** Either of us may terminate the agreement immediately if the other breaches the agreement and fails to remedy the breach within 10 days of notice by the non-breaching party.

**8.3** We may terminate the agreement immediately for any of the following reasons:

(a) We cannot provide any of the Services due to conditions beyond our reasonable control.

(b) In our reasonable opinion, there is insufficient information available to provide a report or other work product that meets our standards.

(c) A conflict of interest arises which prevents us from acting for you.

(d) You have asked us to provide reports or work product that we do not consider to be accurate.

### 9. ASSUMPTIONS AND LIMITATIONS

**9.1** Any report or other work product we deliver as part of the Services will be subject to our standard Statement of Assumptions and Limiting Conditions, provided as an exhibit and as part of the agreement, which will be incorporated into the report or work product.

**9.2** We understand that you may wish to use the report or other work product we deliver as part of the Services to support your Stark law and Anti-Kickback compliance process. Our reports and work product are appraisals prepared

pursuant to Uniform Standards of Professional Appraisal Practice, and do not undertake to evaluate any such compliance. You acknowledge that many factors in addition to property value must be considered to determine Stark or anti-kickback law compliance, and agree that any reports and work product we deliver make no opinion or representation that any transaction involving property we appraise is compliant with Stark law or any anti-kickback law.

### 10. CONFIDENTIALITY

**10.1** We each agree to maintain the confidentiality of each other's confidential information and will not disclose any information received in confidence from each other, until two years after termination or expiration of the agreement, except where required to do so by law.

**10.2** Any report or other work product that we deliver to you in connection with the Services is confidential and may be used by only you, unless we agree otherwise in writing.

### 11. INTELLECTUAL PROPERTY RIGHTS

**11.1** We retain all copyright (and other intellectual property rights) in all materials, reports, systems and other deliverables which we produce or develop for the purposes of the agreement, or which we use to provide the Services.

**11.2** You will not reproduce or copy any part of any report or other work product we produce as part of the Services without our prior written consent.

### 12. GENERAL

**12.1** The agreement may be modified only by a written agreement signed by both of us. Liability accruing before the agreement terminates or expires will survive termination or expiration.

**12.2** The agreement states the entire agreement, and supersedes all prior agreements, between you and JLL with respect to the matters described in the agreement.

**12.3** If a court determines that any part of the agreement is unenforceable, the remainder of the agreement will remain in effect.

**12.4** The agreement is governed by the laws of the State of Illinois. Each of us irrevocably submits



to the exclusive jurisdiction of the courts of that State.

**12.5** The agreement may be executed in multiple counterparts.

**12.6** No director, officer, agent, employee or representative of either of us has any personal liability in connection with the agreement.

**12.7** Neither of us may assign or transfer any rights or obligations under the agreement without the prior written approval of the other. We each agree to be reasonable in evaluating such a request for approval.

**12.8** If there is any conflict between the terms of the letter and this exhibit, the terms of the letter will prevail.

**12.9** If either of us fails to enforce any provision or exercise any right under the Agreement at any time, that failure will not operate as a waiver to enforce that provision or to exercise that right at any other time.

**12.10** The agreement does not establish any partnership or joint venture between us, or make either of us the agent of the other.

**12.11** A person who is not a party to the agreement does not have any rights to enforce its terms unless specifically agreed in writing.

**12.12** Neither of us may publicize or issue any specific information to the media about the Services or the agreement without the written consent of the other.

**12.13** Each of us represents to the other that it is not a person or entity with whom U.S. entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order or other governmental action. Each of us agrees to comply with all applicable laws, statutes, and regulations relating to anti-bribery and anti-corruption.

**12.14** If either party does not comply with the obligations under the agreement and legal action is commenced to enforce the rights under the agreement, the losing party will reimburse the prevailing party reasonable costs (including attorneys' fees), associated with such action. **THE PARTIES HEREBY WAIVE TRIAL BY JURY.**

**12.15** Upon request by you, we will provide commercial general liability additional insured coverage to the property owner or its affiliates to the extent a loss is attributable to JLL VA's negligence.

**12.16** Sections 5, 6, 7, 10, 11, 12.1, 13, 17 and 18 will survive termination of the agreement.

### 13. USE OF DATA AND DATA PROTECTION

**13.1** You agree as follows: (i) The data we collect in connection with the agreement will remain our property. (ii) We and our affiliates may utilize, sell and include data you have provided (either in the aggregate or individually) in the databases of JLL and its affiliates and for use in derivative products. (iii) We may utilize all data already in the public domain on an unrestricted basis.

**13.2** In order for us to provide the Services, we may need to record and maintain in hard copy and/or in electronic form, information regarding the Client, its officers and any other individuals connected with the Client (collectively "Data Subjects"). We may also verify the identity of Data Subjects, which could include carrying out checks with third parties such as credit reference, anti-money laundering or sanctions checking agencies.

**13.3** We may use all information that we hold regarding Data Subjects to provide the Services. We may also use and share it with third parties for other purposes as described in our Privacy Statement available at www.jll.com. We may use both commercially available and proprietary software programs to perform the Services (web based and others).

### 14. SPECIAL EXPERTS

**14.1** If you request our assistance in hiring a special expert to contribute to any assignment (such as a surveyor, environmental consultant, land planner, architect, engineer, business, personal property, machinery and equipment appraiser, among others), you will perform your own due diligence to qualify the special expert. You will be responsible to pay for the services of the special expert.

**14.2** We not responsible for the actions and findings of any special expert. You agree to indemnify and defend us and hold us harmless from all damages that may arise out of your reliance on any special expert.


**15. CONFLICTS POLICY**

JLL adheres to a strict conflict of interest policy. If we learn of a conflict of interest, we will notify you and recommend a course of action to resolve the conflict. If we learn of a conflict that we do not believe can be resolved, we may terminate the agreement without penalty.

**16. FIRREA REQUIREMENTS**

Federal banking regulations require banks and other lending institutions to engage appraisers where FIRREA compliant appraisals must be used in connection with mortgage loans or other transactions involving federally regulated lending institutions. Given that requirement, any report produced by JLL under the agreement, if ordered independent of a financial institution or agent, might not be FIRREA compliant or acceptable to a federally regulated financial institution.

**17. USPAP REQUIREMENTS**

The Ethics Rule of the Uniform Standards of Professional Appraisal Practice ("USPAP") requires us to disclose to you any prior services (appraisal or otherwise) performed within three years prior to the date of this letter by the individual JLL appraiser who will be performing Services for the Property. We represent that to our knowledge, that JLL has not provided prior services within the designated disclosure period, outside of what we have identified.

**18. USE OF WORK PRODUCT AND RELIANCE**

18.1    You agree that any report or other work product we produce in connection with the Services are for your use only, and only for the purpose indicated in the agreement. No person or entity other than the Client may use or rely on any such report or work product unless we consent otherwise in writing, even if such reliance is foreseeable. Any person who receives a copy of any report or other work product we produce as a consequence of disclosure requirements that apply to the Client, does not become an intended user of this report unless the Client specifically identified them at the time of the engagement.

18.2    You will not use any such report or work product in connection with any public documents. You will not refer to JLL in any public documents without our prior written consent. We may give or withhold our consent in our sole discretion for any purpose under this Section 18.

18.3    Notwithstanding the foregoing, JLL understands that applicable law in eminent domain proceedings may require you to disclose our reports and work product to landowners and to otherwise make our reports and work product available to the public.  To the extent required by applicable law, JLL consents to such disclosure.  However, you and only you, and no such landowner or other person or entity, may rely on our reports or our work product.

**19. LITIGATION MATTERS**

19.1    We are not required to testify or provide court-related consultation or to be in attendance in court unless we have agreed to do so in the agreement or otherwise in writing, or if required by law.

19.2    If we receive a subpoena or other judicial command to produce documents or to provide testimony in a lawsuit or proceeding regarding the agreement, we will notify you if allowed by law to do so. However, if we are not a party to these proceedings, you agree to compensate us for our professional time at the then prevailing hourly rates of the personnel responding to the subpoena or providing testimony, and to reimburse us for our actual expenses incurred in responding to any such subpoena or judicial command, including attorneys' fees, if any, as they are incurred.

v. 10_22_2020


## Exhibit B

## Statement of Assumptions and Limiting Conditions

1. All reports and work product we deliver to you (collectively called "report") represents an opinion of value, based on historical information and forecasts of market conditions. Actual results may vary from those forecast in the report. There is no guaranty or warranty that the opinion of value reflects the actual value of the property.

2. The conclusions stated in our report apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events. Assessed values may change significantly and unexpectedly over short periods. We are not liable for any conclusions in the report that may be different if there are subsequent changes in value. We are not liable for loss relating to reliance upon our report more than three months after its date.

3. There may be differences between projected and actual results because events and circumstances frequently do not occur as predicted, and those differences may be material. We are not liable for any loss arising from these differences.

4. We are not obligated to predict future political, economic or social trends. We assume no responsibility for economic factors that may affect or alter the opinions in the report if the economic factors were not present as of the date of the letter of transmittal accompanying the report.

5. The report reflects an appraisal of the property free of any liens or encumbrances unless otherwise stated.

6. We assume responsible ownership and competent property management.

7. The appraisal process requires information from a wide variety of sources. We have assumed that all information furnished by others is correct and complete, up to date and can be relied upon, but no warranty is given for its accuracy. We do not accept responsibility for erroneous information provided by others. We assume that no information that has a material effect on our appraisal has been withheld.

8. We assume the following, unless informed to the contrary in writing: Each property has a good and marketable title. All documentation is satisfactorily drawn and that there are no encumbrances, restrictions, easements or other adverse title conditions, which would have a material effect on the value of the interest under consideration. There is no material litigation pending involving the property. All information provided by the Client, or its agents, is correct, up to date and can be relied upon. We are not responsible for considerations requiring expertise in other fields, including but not limited to: legal descriptions, interpretation of legal documents and other legal matters, geologic considerations such as soils and seismic stability, engineering, or environmental and toxic contaminants. We recommend that you engage suitable consultants to advise you on these matters.

9. We assume that all engineering studies correct. The plot plans and illustrative material in the report are included only to help the reader visualize the property.

10. We assume that there are no hidden or unapparent conditions of the property, subsoil or structures that render it more or less valuable. We are not responsible for such conditions or for obtaining the engineering studies that may be required to discover them.

11. We assume that the property is in full compliance with all applicable federal, state, and local environmental regulations and laws unless the lack of compliance is stated, described, and considered in the report. We have not made or requested any environmental impact studies in conjunction with the report. We reserve the right to



revise or rescind any opinion of value that is based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the report assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

12. Unless otherwise stated in the report, you should assume that we did not observe any hazardous materials on the property. We have no knowledge of the existence of such materials on or in the property; however, we are not qualified to detect such substances, and we are not providing environmental services. The presence of substances such as asbestos, urea-formaldehyde foam insulation and other potentially hazardous materials may affect the value of the property. Our report assumes that there is no such material on or in the property that would cause a loss in value. We do not assume responsibility for such conditions or for any expertise or engineering knowledge required to discover them. We encourage you to retain an expert in this field, if desired. We are not responsible for any such environmental conditions that exist or for any engineering or testing that might be required to discover whether such conditions exist. We are not experts in the field of environmental conditions, and the report is not an environmental assessment of the property.

13. We may have reviewed available flood maps and may have noted in the report whether the property is generally located within or out of an identified Special Flood Hazard Area. However, we are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property. Any opinion of value we include in our report assumes that floodplain and/or wetlands interpretations are accurate.

14. We have not made a specific survey or analysis of the property to determine whether it is in compliance with the Americans with Disabilities Act ("ADA"), Stark law or any anti-kickback laws. We claim no expertise in such issues and render no opinion regarding compliance of you or the property with ADA, Stark law or anti-kickback law or regulations.

15. We assume that the property conforms to all applicable zoning and use regulations and restrictions unless we have identified, described and considered a non-conformity in the report.

16. We assume that all required licenses, certificates of occupancy, consents, and other legislative or administrative authority from any local, state, or national government or private entity or organization have been or can be obtained or renewed for any use on which the opinion of value contained in the report is based.

17. We assume that the use of the land and improvements is confined within the boundaries or property lines of the property described and that there is no encroachment or trespass unless noted in the report.

18. We have not made any investigation of the financial standing of actual or prospective tenants unless specifically noted in the report. Where properties are valued with the benefit of leasing, we assume, unless we are informed otherwise, that the tenants are capable of meeting their financial obligations under the leases, all rent and other amounts payable under the leases have been paid when due, and that there are no undisclosed breaches of the leases.

19. We did not conduct a formal survey of the property and assume no responsibility for any survey matters. The Client has supplied the spatial data, including sketches and/or surveys included in the report, and we assume that data is correct, up to date and can be relied upon.

20. Unless otherwise stated, the opinion of value included in our report excludes any additional value attributable to goodwill, or to fixtures and fittings which are only of value, in situ, to the present occupier. We have made no allowance for any plant, machinery or equipment unless they form an integral part of the building and would normally be included in a sale of the building. We do not normally carry out or commission investigations into the capacity or condition of services being provided to the property. We assume that the services, and any



associated controls or software, are in working order and free from defect. We also assume that the services are of sufficient capacity to meet current and future needs.

21. In the case of property where construction work is in progress, such as refurbishment or repairs, or where developments are in progress, we have relied upon cost information supplied to us by the Client or its appointed experts or upon industry accepted cost guides. In the case of property where construction work is in progress, or has recently been completed, we do not make allowance for any liability already incurred, but not yet discharged, in respect of completed work, or obligations in favor of contractors, subcontractors or any members of the professional or design team. We assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

22. Any allocation in the report of value between the land and the improvements applies only under the stated program of utilization. The separate values allocated to the land and buildings must not be used in conjunction with any other appraisal and are invalid if so used.

23. The report is confidential to the party to whom it is addressed and those other intended users specified in the report for the specific purpose to which it refers. Use of the report for any other purpose or use by any party not identified as an intended user of the report without our prior written consent is prohibited, and we accept no responsibility for any use of the report in violation of the terms of this Agreement.

24. We are not required to testify or provide court-related consultation or to be in attendance in court unless we have agreed to do so in writing.

25. Neither the whole report, nor any part, nor reference thereto, may be published in any manner without our prior written approval.

26. We may rely on, and will not verify, the accuracy and sufficiency of documents, information and assumptions provided to it by the Client or others. We will not verify documents, information and assumptions derived from industry sources or that JLL or its affiliates have prepared in the regular course of business. We are not liable for any deficiency in the report arising from the inaccuracy or insufficiency of such information, documents and assumptions. However, our report will be based on our professional evaluation of all such available sources of information.

27. JLL IS NOT LIABLE TO ANY PERSON OR ENTITY FOR LOSS OF PROFITS, CONSEQUENTIAL, PUNITIVE, EXEMPLARY OR SIMILAR DAMAGES IN CONNECTION WITH THIS AGREEMENT. IN NO EVENT SHALL THE LIABILITY OF JLL AND ITS AFFILIATES IN CONNECTION WITH THIS AGREEMENT EXCEED THE FEE PAID TO JLL HEREUNDER.

28. Unless expressly advised to the contrary, we assume that appropriate insurance coverage is and will continue to be available on commercially acceptable terms.

29. We assume that no material changes in any applicable federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

30. We may determine during the course of the assignment that additional Hypothetical Conditions and Extraordinary Assumptions may be required in order to complete the assignment. The report will be subject to those Hypothetical Conditions and Extraordinary Assumptions. Each person that is permitted to use the report agrees to be bound by all the Assumptions and Limiting Conditions and any Hypothetical Conditions and Extraordinary Assumptions stated in the report.



Exhibit A
## Terms and Conditions

### 1. INTRODUCTION

**1.1** These Terms and Conditions supplement the proposal, agreement, letter of engagement or email (the "engagement") between JLL Valuation and Advisory Services, LLC and the Client indicated in the engagement that sets out details of the Services to be provided to the Client. All capitalized terms in this exhibit have the meanings given to them in the engagement unless given a different meaning in this exhibit. These Terms and Conditions, together with the engagement and all other exhibits, schedules and riders to the engagement, are collectively called the "agreement".

### 2. SERVICES

**2.1** We will provide the Services using reasonable care and skill.

**2.2** We may make changes to the Services if necessary to comply with any law or safety requirement. We will notify you if that happens. Otherwise, JLL and the Client must agree in writing to any changes to the Services, the Fees, or any other provision of the agreement.

### 3. CLIENT OBLIGATIONS

**3.1** You agree to give us all documents and other information that we advise you are reasonably necessary for us to provide the Services.

**3.2** You will maintain adequate property and public liability insurance to reasonably insure property that you own or occupy and any activities on that property. You will obtain all necessary licenses, permissions and consents which may be required to enable us to perform the Services (other than professional licenses that we are required to maintain to perform the Services). You are responsible to keep your property in a safe condition so that we may perform the Services in reasonable safety.

**3.3** You will notify us promptly if you believe any information you have provided is incomplete or inaccurate.

### 4. DELAY

We are not responsible for any delay in our performance of the Services if caused by any event beyond o u r reasonable control, or for any delay caused by your failure to comply with the agreement.

### 5. FEES, EXPENSES AND PAYMENT

**5.1** Our fee in its entirety is earned upon delivery of the first report. We will invoice you at time of delivery for any outstanding balance.

**5.2** You agree that your obligation to pay the Fee is not contingent upon the results, conclusions or recommendations we provide.

**5.3** If we are asked to invoice any other party, you agree to settle our invoice immediately if the other party does not do so within 30 days of the date of the invoice.

**5.4** Delinquent payments under the agreement will earn interest at the rate of one and one-half percent (1-1/2%) per month from the date due until paid, or if lower, the maximum rate permitted by law. If the Fee or any part of it remains unpaid 30 days after it was due, you may not use any report or work product we have delivered to you for any reason.

**5.5** If you terminate this agreement before the Services are completed, you will pay us, no later than the termination date, a reasonable fee proportionate to the part of the Services performed to the date of termination.

**5.6** Our rights under Section 5.3 and 5.4 are in addition to, and will not limit, our right to pursue any other rights and remedies under the agreement or at law or in equity.

### 6. INDEMNITY

You agree to indemnify and defend us and hold us harmless from any loss, liability or expense (including attorneys' fees) arising from a third party action, claim or proceeding ("Loss") that we suffer arising out of the agreement or the Services, other than Loss that a court of competent jurisdiction has determined was the result of our negligence or willful misconduct. We agree to indemnify and defend you and hold you harmless from any Loss that you suffer arising out of our negligent performance of Services under the

**EXHIBIT B**

(Miller Declaration)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (EASTERN DIVISION)

| | |
|---|---|
| In re: | Chapter 11 |
| NESV ICE, LLC, *et al.*[3], | Case No. 21-11226-CJP |
| Debtors. | Jointly Administered |

## DECLARATION OF JOSEPH MILLER IN SUPPORT OF EMPLOYMENT OF JLL VALUATIONS & ADVISORY LLC, AS APPRAISERS FOR THE DEBTORS AND DEBTORS-IN-POSSESSION

I, Joseph Miller, hereby declare and state as follows:

1.      I am a Managing Director of the firm JLL Valuations & Advisory LLC, with an office of 200 E Randolph St Floor 43-48, Chicago, IL 60601 (the "Firm"). I submit this declaration pursuant to the Debtors' Application for an Order Authorizing the Employment and Retention of JLL Valuation & Advisory Services, LLC Appraisers For the Debtors and Debtors-In-Possession (the "Application").

2.      The Firm was retained by Debtor NESV Ice, LLC on or about October 18, 2021 to appraise the value of the Debtors' real property, and more specifically, the as-is market value of the existing ice rink, the as-is market value of the land under current zoning ordinance and allowances, and an as-is market value of the land as proposed, assuming the required zoning approvals are granted.

3.      The Firm rendered no prepetition services to the Debtors and holds no

---

[3] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are as follows: NESV Ice, LLC (1262), NESV Swim, LLC (5919), NESV Tennis, LLC (6937), NESV Land East, LLC (4138), NESV Field, LLC (5539), NESV Hotel, LLC (9151), and NESV Land, LLC (2353).

prepetition claim against any of the Debtors. The Firm is in possession of $22,500, that was wired to it on or about August 26, 2021, an advance retainer for its anticipated services, the fee for which is $22,500. The wire was sent to JLL by Ajax 5Cap NESV, LLC, but I have been informed that NESV Ice, LLC was the ultimate source of the funds.

4.     The Debtors have requested that the Firm proceed with the appraisal services described above, and the Firm has agreed to provide such services provided that it will be permitted to retain the advance payment it received prepetition for such services.

5.     To the best of my knowledge, my and the Firm's connections with the Debtors, their creditors, other parties in interest, their respective attorneys, accountants or other professionals, or the United States Trustee for this district are as follows: None.

6.     The Firm may have performed services in the past and may perform services in the future, in matters unrelated to these Chapter 11 cases, for persons that are parties-in-interest in the Debtors' Chapter 11 cases. As part of its customary practice, the Firm is retained in cases, proceedings and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants and parties-in-interest in these Chapter 11 cases.

7.     To the best of my knowledge, neither I nor any member of or professional employed by the Firm, holds or represents any material interest adverse to the Debtors or their estates with respect to the matters on which the

Firm is to be employed, and except as set forth above with respect to amounts owed to the Firm by the Debtors, the Firm and each of its members is a "disinterested person" within the meaning of 11 U.S.C. § 101(14).

8.      In accordance with the Application, and subject to the Court's permission, upon delivery of the Report to the Debtors the Firm intends retain the prepetition payment the Firm received as payment for those services. I understand that, to the extent that the Firm's fees for services rendered to the Debtors exceed the amount of the advance payment previously made to the Firm, including if the Firm provides expert services to the Debtors for which it seems compensation, the Firm will be required to maintain time records and follow ordinary procedures for applying for payment, including in accordance with the Bankruptcy Code, the Bankruptcy Rules, the MLBR, and the Court's Administrative Order on Motion for Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses Of Professionals (Doc. No. 133).

9.      For expert services and testimony, the Firm will charge the Debtors on an hourly basis, at its prevailing rate of $600.00, and request reimbursement for related costs and expenses.

10.      No promises have been made by me, the Firm, or by any member or professional employed by the Firm as to compensation in connection with these cases other than in accordance with the Application and any applicable provisions of the Bankruptcy Code.

11.      I hereby represent that neither I nor any member of or professional

employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other persons, other than the members and regular employees of the Firm as permitted pursuant to Section 504(b)(1) of the Bankruptcy Code.

12.     If at any time during the period of its employment the Firm should discover any facts bearing on the matters described herein, including that any of the within representations is incorrect or that there is a change of circumstances relating thereto, the Firm will supplement the information contained in this Declaration.

13.     I shall amend this statement immediately upon learning that (A) any of the within representations are incorrect or (B) there is any change of circumstance relating thereto.

14.     I have reviewed the provisions of MLBR 2016-1.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 23 day of December , 2021 at 200 E Randolph St Floor 43-48, Chicago, IL 60601.

Joseph Miller

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (EASTERN DIVISION)

|  |  |
|---|---|
| In re: | |
| NESV ICE, LLC, *et al.*[1], | Chapter 11 |
| | Case No. 21-11226-CJP |
| Debtors. | Jointly Administered |

## DECLARATION RE: ELECTRONIC FILING

I, Joseph Miller, hereby declare under penalty of perjury that all of the information contained in the Declaration of Joseph Miller in Support of Employment of JLL Valuations and Advisory LLC as a Professional to Render Services in the Ordinary Course of Business (the "Document"), filed electronically in the above-captioned case, is true and correct. I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

I further understand that, pursuant to the Massachusetts Electronic Filing Local Rule (MEFR) 7(b), all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: 12-23-21

_/s/ Joseph Miller_
Joseph Miller

## PART II - DECLARATION OF ATTORNEY

I certify that the affiant(s) signed this form before I submitted the Document, I gave the affiant(s) a copy of the Document and this DECLARATION, and I have followed all other electronic filing requirements currently established by local rule and standing order. This DECLARATION is based on all information of which I have knowledge and my signature below constitutes my certification of the foregoing under Fed. R. Bankr. P. 9011. I have reviewed and will comply with the provisions of MEFR 7.

Dated: January 4, 2022

Signed: _/s/ Joseph M. Downes III_
(Attorney for the Debtors)

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are as follows: NESV Ice, LLC (1262), NESV Swim, LLC (5919), NESV Tennis, LLC (6937), NESV Land East, LLC (4138), NESV Field, LLC (5539), NESV Hotel, LLC (9151), and NESV Land, LLC (2353).

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

In re:

NESV ICE, LLC, *et al.*[1],

     Debtors.

Chapter 11
Case No. 21-11226-CJP

Jointly Administered

## CERTIFICATE OF SERVICE

     I, Joseph M. Downes III, do hereby certify that on January 4, 2022, I caused

copies of:

       1.     Application for an Order Authorizing the Employment and Retention of JLL Valuation & Advisory Services, LLC as Appraisers for the Debtors and Debtors-In-Possession (*Expedited Determination Requested*); and

       2.     this Certificate of Service

to be served as set forth in the attached service list, either via the Court's ECF

system, where indicated, or by first class mail, and on all registered participants in

the above-captioned bankruptcy case.

*/s/ Joseph M. Downes III*
Joseph M. Downes III

Dated: January 4, 2022

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are as follows: NESV Ice, LLC (1262), NESV Swim, LLC (5919), NESV Tennis, LLC (6937), NESV Land East, LLC (4138), NESV Field, LLC (5539), NESV Hotel, LLC (9151), and NESV Land, LLC (2353).

| | | |
|---|---|---|
| Office of The United States Trustee<br>5 Post Office Square, Suite 1000<br>Boston, MA 02109-3934<br>**VIA ECF** | | |
| **Taxing Authorities** | Siddall & Siddall, P.C.<br>1350 Main Street, Suite 210<br>Springfield, MA 01103<br>Attn. Michael Siddall<br>Attn. Amy Megliola<br><br>*Counsel to the City of Attleboro* | |
| **Twenty Largest General Unsecured Creditors (all debtors)** | | |
| Ashcroft Sullivan Law<br>200 State Street<br>7th Floor<br>Boston, MA, 02109 | National Grid<br>300 Erie Blvd. W.<br>Syracuse, NY 13202 | WB Mason<br>59 Centre St.<br>Brockton, MA, 02301<br>Attn. Lisa M. Fiore |
| Eversource Gas of MA<br>P.O. Box 2025<br>Springfield, MA, 01102 | JBH Advisory, LLC<br>62 Forge River Park<br>Raynham, MA, 02767 | Likarr Maintenance Systems<br>6 Perry Drive<br>Foxboro, MA, 02035 |
| Richmonds & Co., Inc.<br>44 Washington Street<br>Wellesley Hills, MA, 02481 | PKF O'Connor Davies<br>40 Westminster Street #600<br>Providence, RI, 02903 | Sturdy Memorial Hospital<br>211 Park Street<br>Attleboro, MA, 02703 |
| **Notices of Appearance** | Tom Curran<br>Peter Antonelli<br>Christopher Marks<br>Curran Antonelli, LLP<br>10 Post Office Square<br>Suite 800 South<br>Boston, MA 02109<br>tcurran@ curranantonelli.com<br>cmarks@ curranantonelli.com<br>pantonelli@curranantonelli.com<br>**VIA ECF**<br><br>*Counsel to SHS ACK, LLC* | Gary M. Hogan, Esq.<br>Baker, Braverman & Barbadoro, P.C.<br>300 Crown Colony Drive, Suite 500<br>Quincy, MA 02169<br>garyh@bbb-lawfirm.com<br>**VIA ECF**<br><br>*Counsel to Ashcroft Sullivan Sports Village Lender, LLC* |
| Paul W. Carey<br>Mirick, O'Connell, DeMallie & Lougee, LLP 100 Front Street<br>Worcester, MA 01608<br>pcarey@mirickoconnell.com<br>**VIA ECF**<br><br>*Counsel to Construction Source Management, LLC* | Michael L. Mahoney<br>Michael L. Mahoney PC<br>45 Braintree Hill Office Park, Suite 202<br>Braintree, MA 02184<br>michael@mlmesq.com<br>**VIA ECF**<br><br>*Counsel to Construction Source Management, LLC* | Matthew J. McGowan, Esq.<br>Salter McGowan Sylvia & Leonard, Inc.<br>56 Exchange Terrace, Suite 500<br>Providence, RI 02903<br>mmcgowan@smsllaw.com<br>**VIA ECF**<br><br>*Counsel to Ian Marsh* |