|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | Case No. 21-11226 (CJP) |
| NESV ICE, LLC, *et al.*,[1] | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## OBJECTION TO APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF JLL VALUATION & ADVISORY SERVICES, LLC AS APPRAISERS FOR THE DEBTORS AND DEBTORS-IN-POSSESSION

Secured creditor, SHS ACK, LLC ("SHS") hereby objects to the Debtors' *Application for an Order Authorizing the Employment and Retention of JLL Valuation & Advisory Services, LLC as Appraisers for the Debtors and Debtors-in-Possession* (the "Retention Application") [ECF No. 213]. Through the Retention Application, the Debtors seek to use SHS' cash collateral to pay JLL Valuation & Advisory Services, LLC ("JLL") a flat fee of $22,500.00 to perform an appraisal of their property without providing SHS *any* adequate protection therefore and payable from a pre-petition retainer that was not disclosed by Ice on its bankruptcy schedules and was paid out of SHS' cash collateral on the Petition Date. Sadly, the Motion exposes yet another instance of the Debtors' blatant disregard of the fundamental disclosure and procedural requirements that every Chapter 11 bankruptcy debtor must follow and that continues to permeate these cases. The Debtors should not be rewarded for their hide the money shell games. This Court should deny the Motion.

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are as follows: NESV Ice, LLC ("Ice") (1262), NESV Swim, LLC ("Swim") (5919), NESV Tennis, LLC ("Tennis") (6937), NESV Land East, LLC ("Land East") (4138), NESV Field, LLC ("Field") (5539), NESV Hotel, LLC ("Hotel") (9151), and NESV Land, LLC ("Land") (2353) (collectively referred to as the "Debtors").

Indeed, Ice provided JLL with a "retainer" ***on the Petition Date*** in order to frustrate SHS' security interest in all of its cash collateral and to side-step the protections afforded to secured creditors such as SHS for the use of cash collateral during a bankruptcy case. Troublingly, this "retainer" was not even disclosed by Ice on its bankruptcy schedules further evidencing that these monies were given to JLL to shield them from Ice's creditors, namely SHS.

Debtors also request that the Court disregard the express statutory procedural requirements and safeguards of the Bankruptcy Code and Rules and allow JLL to draw down on its "retainer" without obtaining approval from the Court as required by Sections 330 and 331 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016. These statutes and rules expressly require that payments to professionals employed by the estate can only be made following bankruptcy court approval and ***after the services are actually rendered***. *In re C & P Auto Transp., Inc.*, 94 B.R. 682, 688 (Bankr. E.D. Cal. 1988) (quoting 11 U.S.C. §331) ("[a] central tenet of such compensation [of professionals employed by the estate] is that it is to be awarded only after services are rendered. Interim compensation, under the standards of section 330, is permitted upon application and hearing only 'for services rendered before the date of such an application.'").

The Debtors have provided absolutely no justification or authority for the Court to depart from the requirements of the Bankruptcy Code and Rules and disregard the requirements of the fee application process that every professional employed by a bankruptcy estate throughout the country must follow. Accordingly, the Court should deny the Debtors' request to circumvent the procedural requirements of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure and require that JLL obtain approval from this Court prior to withdrawing any monies from its "retainer."

<u>**ARGUMENT**</u>

**I.    THE DEBTORS CANNOT USE SHS' CASH COLLATERAL WITHOUT PROVIDING ADEQUATE PROTECTION[2]**

The Court should deny the Debtors' request to pay JLL a $22,500.00 flat fee using SHS' cash collateral. Through their Retention Application, the Debtors admit that Ice, apparently through its parent company Ajax 5Cap NESV, LLC,[3] transferred this sum to JLL on the Petition Date but that as of the date of the Motion "JLL has provided no services on behalf of the Debtors, and the Debtors do not owe JLL any amounts for services rendered before the Petition Date." Retention Application ¶20. As a result, JLL is simply holding Ice's $22,500.00 in trust for Ice. Again, shockingly, the existence of this retainer was concealed from the Court and SHS until the Debtors were extensively questioned about it during the Section 341 Meeting of Creditors by counsel for the United States Trustee and counsel for SHS. In fact, Ice falsely stated in its Schedule A/B, filed under oath in this case, that it had ***no*** deposits or prepayments held by any third party. *See* ECF No. 89, Schedule A/B, part 2, questions 6-8 (listing no deposits or prepayments). The Debtors' can hardly be credited for disclosing this "retainer", amongst others, ***only after*** being forced to do so by the United States Trustee and creditors in clear contravention of their disclosure requirements under the Bankruptcy Code. *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987) ("Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.")

---

[2]    SHS hereby incorporates by reference the arguments raised in its prior objections to the Debtors use of its cash collateral. [ECF Nos. 24, 58 and 147].

[3]    At this juncture, SHS has been unable to confirm and/or trace the precise paths of the money transfers made pre-petition amongst the Debtors and their insiders. The need for such tracing and related concerns prompted SHS's Rule 2004 discovery requests, but SHS is still waiting on certain documentary productions in anticipation of examining the Debtors, their insiders and their professionals as Ordered by the Court. *See* ECF No. 131.

Notwithstanding the fact that these monies are being held by JLL pending the execution of its engagement letter, Ice retains the ownership interest in those monies, and they continue to be SHS' cash collateral which is **subject to this Court's prior orders**. *See Indian Motocycle Assocs. III Ltd. P'ship v. Mass. Hous. Fin. Agency*, 66 F.3d 1246, 1255 (1st Cir. 1995) ("the debtor's equitable 'interest' in any unearned portion of the retainer, impressed with [the secured creditors'] perfected lien, would have become property of the estate on the date the chapter 11 petition was filed… and presumably would remain subject to a turnover order in a section 542 action brought by the debtor in possession."). Therefore, because the "retainer" being held by JLL has yet to be earned, this money remains property of Ice's bankruptcy estate and subject to SHS' perfected lien in Ice's cash collateral. *See In re Anderson*, 253 B.R. 14, 23 (Bankr. E.D. Mich. 2000) (citing 11 U.S.C. § 541(a)(1)) ("unearned retainers must be deposited into a client trust account, and upon a bankruptcy filing, the retainer is property of the bankruptcy estate") (collecting cases).

Furthermore, the Debtors are essentially proposing that Ice use SHS' cash collateral to pay for an appraisal of its Co-Debtors' real property. However, the Court has already indicated in the context of Ice making tax payments on behalf of its Co-Debtors **is not an appropriate use of SHS' cash collateral**. Nor is it appropriate for one Estate to pay for the expenses of another Estate. Intercompany loans between two Bankruptcy Estates without proper application and Court authorization is clearly impermissible under well settled bankruptcy law. This is yet another in a long list of inappropriate and impermissible uses of SHS' cash collateral that Ice has attempted since these cases were commenced. The Debtors' continued disregard for the simple and straightforward requirements of the Bankruptcy Code, Rules and Orders of this Court should not be tolerated. Therefore, the Court should not allow the Debtors to use SHS' cash collateral

to pay JLL without first providing SHS adequate protection and obtaining permission from the

Court to do so under Section 363 of the Bankruptcy Code.

II.     **THE DEBTORS AND JLL MUST COMPLY WITH THE BANKRUPTCY CODE'S PROCEDURAL REQUIREMENTS FOR COMPENSATING PROFESSIONALS RETAINED BY THE ESTATE**

Quite obviously, the Court has never entered an order allowing the Debtors to retain JLL

pursuant to §327(a), which expressly requires Court approval for the employment of appraisers

that meet the no adversity and disinterestedness provisions of that Bankruptcy Code section.  Nor

has the Court approved the retainer arrangement proposed by the Debtors and JLL as is also

required under §328(a) of the Code.  Thus, absent an application for compensation and absent

express permission from the Court to draw upon retainer funds, there is no authority for

permitting a professional who has been employed under §327, such as JLL, assuming the Court

approves its retention, to apply the retainer against its bills unilaterally.  *In re C & P Auto*

*Transp., Inc.*, 94 B.R. 682, 689 (Bankr. E.D. Cal. 1988).  "Indeed, such a practice would tend to

frustrate the congressional mandate that fees be awarded by the court after withstanding scrutiny

from parties in interest."  *Id.*; *see also In re Printing Dimensions, Inc.*, 153 B.R. 715, 720 (Bankr.

D. Md. 1993) ("[a]pproval of the bankruptcy court must be obtained before the retainer may be

applied.").

"Until the court has approved a fee application, any pre-petition retainer, flat fee, or

advance payment of fees for post-petition services must be held in trust… No fees may be paid

after the filing of the petition until the court has approved the requested compensation."  *In re*

*Pedersen*, 229 B.R. 445, 449 (Bankr. E.D. Cal. 1999) (citing *In re C & P Auto Transport, Inc.*,

94 B.R. at 686); *see also In re Tundra Corp.*, 243 B.R. 575, 582-83 (Bankr. D. Mass. 2000)

(quoting *In re McDonald Bros. Construction, Inc.*, 114 B.R. 996 (Bankr. N.D. Ill. 1990))

(internal quotations omitted) (stating that the "fee application process is required if the retainer is property of the estate, and is not required otherwise").

Here, the pre-petition "retainer" given to JLL is clearly property of Ice's bankruptcy estate, as JLL has performed no services and earned no portion of those monies. *See* Retention Application ⁋20; *see also In re Anderson*, 253 B.R. 14, 23 ("unearned retainers must be deposited into a client trust account, and upon a bankruptcy filing, the retainer is property of the bankruptcy estate"). Therefore, the Bankruptcy Code and Rules require that JLL cannot be paid using that "retainer" without first performing services on behalf of the Debtors and then obtaining approval from the Bankruptcy Court to draw down on the retainer. *See In re Tundra Corp.*, 243 B.R. at 582-83.

## CONCLUSION

WHEREFORE, creditor SHS ACK, LLC respectfully requests that the Court DENY the Debtor's request to use its cash collateral without providing adequate protection to SHS; DENY the Debtors' request that JLL be exempt from complying with the Bankruptcy Code's procedures for compensation of professionals of the Bankruptcy Estate; and GRANT any other or further relief as the Court deems just and proper.

Respectfully Submitted,

SHS ACK, LLC

By its attorneys,

/s/ *Thomas H. Curran*
Thomas H. Curran, BBO# 550759
tcurran@curranantonelli.com
Peter Antonelli, BBO# 661526
pantonelli@curranantonelli.com
Christopher Marks BBO# 705612
cmarks@curranantonelli.com
Curran Antonelli, LLP
Ten Post Office Square, Suite 800 South
Boston, MA 02109
Telephone: (617) 207-8670
Fax: (617) 850-9001

Dated: January 7, 2022

## CERTIFICATE OF SERVICE

I, Thomas H. Curran, hereby certify that on this 7th day of January 2022, a copy of the

foregoing was filed electronically. Notice of this will be sent by e-mail to all parties by operation

of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Thomas H. Curran*
Thomas H. Curran