# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

| | |
|---|---|
| In re: | Chapter 11 |
| NESV ICE, LLC, et al.,[1] | Case No. 21-11226-CJP |
| Debtors. | Jointly Administered |

## JOINT PLAN OF REORGANIZATION OF
## NESV ICE, LLC, NESV SWIM, LLC, NESV TENNIS, LLC,
## NESV LAND EAST, LLC, NESV FIELD, LLC,
## NESV HOTEL, LLC, NESV LAND, LLC, ASHCROFT SULLIVAN
## SPORTS VILLAGE LENDER, LLC, AND SHUBH PATEL, LLC

Donald R. Lassman, Esq.
LAW OFFICE OF DONALD R. LASSMAN
P.O. Box 920385
Needham, MA 02492
Email: don@lassmanlaw.com
Telephone: (781) 455-8400
Co-Counsel for Shubh Patel, LLC

and

Harold B. Murphy, Esq.
D. Ethan Jeffery, Esq.
MURPHY& KING, P.C.
One Beacon Street
Boston, MA 02108
Email: EJeffery@murphyking.com
Telephone: (617) 423-0400
Co-Counsel for Shubh Patel, LLC

Joseph M. Downes III, Esq.
William S. McMahon, Esq.
DOWNES MCMAHON LLP
215 Lewis Wharf
Boston, MA 02110
Email: jdownes@dmlawllp.com
Telephone: (617) 600-86935
Counsel for Debtors

Gary M. Hogan, Esq.
Baker, Braverman & Barbadoro, P.C.
300 Crown Colony Drive, Suite 500
Quincy, MA 02169-0904
Email: garyh@bbb-lawfirm.com
Telephone: (781) 848-9610
Counsel for Ashcroft Sullivan Sports Village
Lender, LLC

Dated: February 1, 2022

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are: NESV Ice, LLC (1262), NESV Swim, LLC (5919), NESV Tennis, LLC (6937), NESV Land East, LLC (4138), NESV Field, LLC (5539), NESV Hotel, LLC (9151), and NESV Land, LLC (2353).

NESV Ice, LLC, NESV Swim, LLC, NESV Tennis, LLC, NESV Land East, LLC, NESV Field, LLC, NESV Hotel, LLC, and NESV Land, LLC, each a debtor and debtor-in-possession in the Bankruptcy Cases (as defined below), propose, with Ashcroft Sullivan Sports Village Lender, LLC and Shubh Patel, LLC, the following joint plan of reorganization under section 1121 of the United States Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of the Plan, the following terms shall have the meanings specified in this Article I. A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated. The words "in the Plan," "the Plan," "hereto," "herein", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, sub-section or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the terms of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions the Plan.

**1.1** "Administrative Expense Claim" shall mean a Claim under section 503(b) of the Bankruptcy Code and that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, including Professional Fee Claims.

**1.2** "Affiliate" shall mean any Person that is an affiliate of the Debtors or the Reorganized Debtors under the Bankruptcy Code.

**1.3** "Allowed" shall mean, with reference to any Claim or Equity Interest:

(a) a Claim or Equity Interest that has been listed by the Debtors in their Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim or Equity Interest as to which a proof of claim or interest has been filed;

(b) a Claim or Equity Interest as to which a timely proof of claim or interest has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

(c) a Claim arising from the recovery of property under section 550 or 553 of the Bankruptcy Code and allowed in accordance with section 502(h) of the Bankruptcy Code; or

806286

      (d)      any Claim or Equity Interest expressly allowed under the Plan, pursuant to the Confirmation Order or pursuant to a Final Order of the Bankruptcy Court.

**1.4**     "<u>Asserted SHS Secured Claims</u>" shall mean the Claim set forth in the proof of claim filed against the Debtors by SHS on November 29, 2021.

**1.5**     "<u>Asset(s)</u>" shall mean any real or personal property of any Debtor, whether tangible or intangible and wherever situated, together with the proceeds thereof.

**1.6**     "<u>ASVL</u>" shall mean Ashcroft Sullivan Sports Village Lender, LLC and all of its Affiliates, subsidiaries and any other party claiming through Ashcroft Sullivan Sports Village Lender, LLC.

**1.7**     "<u>Avoidance Actions</u>" shall mean Causes of Action arising or held by the Debtors under chapter 5 of the Bankruptcy Code, and/or under related state or federal statutes and common law, including fraudulent transfer laws.

**1.8**     "<u>Bankruptcy Cases</u>" shall mean, collectively, the chapter 11 bankruptcy proceedings pending in the Bankruptcy Court under docket numbers 21-11226-CJP, 21-11227-CJP, 21-11228-CJP, 21-11229-CJP, 21-11230-CJP, 21-11231-CJP and 21-11232-CJP.

**1.9**     "<u>Bankruptcy Code</u>" shall mean title 11 of the United States Code in effect in the Bankruptcy Cases.

**1.10**     "<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the District of Massachusetts in which the Bankruptcy Cases are pending and, to the extent of any reference under 28 U.S.C. §157, the unit of such District Court specified pursuant to 28 U.S.C. §151.

**1.11**     "<u>Bankruptcy Rules</u>" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.12**     "<u>Bar Date</u>" shall mean, as applicable, either (a) November 29, 2021, the date fixed by order of the Bankruptcy Court as the last date by which Persons asserting certain Claims against the Debtors must file a proof of claim or interest or be forever barred from asserting a Claim against the Debtors or their property, from voting on the Plan and/or sharing in distributions under the Plan, or (b) February 22, 2022, the date fixed by the Bankruptcy Court as the last date by which governmental units, as defined in 11 U.S.C. § 101(27), must file proofs of claim against the Debtors.

**1.13**     "<u>Business Day</u>" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts.

**1.14**     "<u>Cash</u>" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

806286

**1.15** "Causes of Action" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, those Avoidance Actions that the Debtors and the Reorganized Debtors have not expressly covenanted in this Plan that they shall not commence or pursue.

**1.16** "Claim" shall mean a claim against a Person or its property as defined in section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.17** "Class" shall mean those classes designated in Article III of the Plan.

**1.18** "Collateral" shall mean any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.19** "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in these Bankruptcy Cases.

**1.20** "Confirmation Hearing" shall mean the hearing on confirmation of the Plan.

**1.21** "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan, in form and substance reasonably acceptable to the Proponents.

**1.22** "Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

**1.23** "CSM" shall mean Construction Source Management, LLC and all of its Affiliates, subsidiaries and any other party claiming through Construction Source Management, LLC.

**1.24** "Cure Claim" shall mean the amount necessary to cure any defaults in an executory contract or unexpired lease so that such contract or lease may be assumed pursuant to section 365(b)(1) of the Bankruptcy Code.

**1.25** "Debtors" shall mean, collectively, Ice, Swim, Tennis, Land East, Field, Hotel and Land, including, from and after the Effective Date, in their capacity as Reorganized Debtors.

**1.26** "<u>Deficiency Claim</u>" shall mean the amount by which the Allowed Claim of a creditor exceeds the Allowed Secured Claim of such creditor.

**1.27** "<u>DIP Loans</u>" shall mean, collectively, all post-petition debtor-in-possession loans made by SP to the Debtors.

**1.28** "<u>Disclosure Statement</u>" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.29** "<u>Disputed Claim</u>" shall mean:

    (a)    if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

    (b)    if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by one or more of the Debtors in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

    (c)    a Claim that is a Contingent or Unliquidated Claim.

**1.30** "<u>Distribution Record Date</u>" shall mean fifteen (15) days prior to the first scheduled hearing on the approval of the Disclosure Statement or such other date established by the Bankruptcy Court.

**1.31** "<u>Effective Date</u>" shall mean the first Business Day after the later to occur of (a) the fifteenth (15th) day following the Confirmation Date, provided that no stay pending appeal of the Confirmation Order has been granted, or (b) the date that all conditions precedent to the effectiveness of the Plan have been satisfied or waived by the Debtors pursuant to section 10.2 of the Plan.

**1.32** "<u>Equity Interest</u>" shall mean the interest of any holder of any membership interest in any of the Debtors, and all options and/or rights, contractual or otherwise, to acquire at any time any membership interest in any of the Debtors, as such interest exists immediately prior to the Effective Date.

**1.33** "<u>Estate(s)</u>" shall mean in the singular, with reference to a specific Debtor, the estate created in such Debtor's Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and in the plural all of the Debtors' bankruptcy estates created pursuant to section 541 of the Bankruptcy Code.

**1.34** "<u>Estimated CSM Secured Claim</u>" shall mean the amount of the estimated CSM Secured Claim, if any, as determined by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code.

**1.35** "<u>Estimated SHS Secured Claims</u>" shall mean the amount of the estimated SHS Secured Claims as determined by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code.

**1.36** "<u>Field</u>" shall mean NESV Field, LLC, one of the Debtors and a debtor-in-possession.

**1.37** "<u>Final Order</u>" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (b) if appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.38** "<u>General Unsecured Claim</u>" shall mean a Claim that is: (a) not a Secured Claim, (b) not entitled to priority of payment under section 507 of the Bankruptcy Code, and (c) not a Claim for an Equity Interest.

**1.39** "<u>Hotel</u>" shall mean NESV Hotel, LLC, one of the Debtors and a debtor-in-possession.

**1.40** "<u>Ice</u>" shall mean NESV Ice, LLC, one of the Debtors and a debtor-in-possession.

**1.41** "<u>Internal Revenue Code</u>" shall mean Title 26 of the United States Code, as amended from time to time.

**1.42** "<u>Insider</u>" shall have the meaning set forth in section 101(31) of the Bankruptcy Code, provided that it shall not include any Debtor.

**1.43** "<u>Land</u>" shall mean NESV Land, LLC, one of the Debtors and a debtor-in-possession.

**1.44** "<u>Land East</u>" shall mean NESV Land East, LLC, one of the Debtors and a debtor-in-possession.

**1.45** "<u>Lien</u>" shall have the meanings set forth in sections 101(36) and (37) of the Bankruptcy Code; provided that (a) a lien that has been avoided in accordance with sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) no lien shall be valid unless approved by a Final Order of the Bankruptcy Court or by agreement of the Debtor against whom the lien is asserted.

**1.46** "<u>Loan Documents</u>" shall mean all documents evidencing a Secured Claim and/or the Lien securing such Claim, executed by the Debtors prior to the Petition Date, including, without limitation, notes, loan agreements, mortgages (including ship and fleet mortgages),

security agreements, financing statements, guaranties, swap agreements, and such other documents executed in connection with such Secured Claim and/or Lien.

**1.47** "<u>NESV Holding</u>" shall mean the entity designated by SP to hold the new Equity Interests in the Reorganized Debtors that will be issued under the Plan.

**1.48** "<u>Net Asserted SHS Secured Claims</u>" shall mean the SHS Secured Claims in an amount equal to the difference between the Asserted SHS Secured Claim and the Estimated SHS Secured Claims.

**1.49** "<u>Net Proceeds</u>" shall mean for all Assets of the Debtors, the gross proceeds of any sale, transfer or other liquidation of any of the Assets, including the prosecution of Causes of Action, less the aggregate of: (a) the costs and expenses of selling, transferring, prosecuting and/or liquidating the Assets, including, without limitation, professional fees and expenses related to the recovery and disposition of the Assets; (b) taxes (including capital gains taxes); (c) accrued and unpaid Real Estate Taxes and municipal liens; and (d) closing costs and other usual and ordinary recording and/or settlement charges.

**1.50** "<u>On Account</u>" shall mean, with respect to any payment made on a Claim that is not Allowed, that such payment is made without prejudice to: (a) any rights, claims and defenses with respect to such Claim, (b) the right to contest such Claim, including without limitation by filing an adversary proceeding against the holder of the Claim and/or an objection to such Claim, (c) the right to seek an allocation of such payment to principal, interest and/or costs when the Claim becomes an Allowed Claim, and (d) the right of the Debtors to recover, and the obligation of the recipient to return, the amount by which a payment On Account exceeds the Allowed amount of such Claim.

**1.51** "<u>Organization Documents</u>" shall mean, as applicable, the Debtors' respective operating agreements, trust agreements, articles of incorporation, bylaws, corporate minute books and such other documents evidencing the Debtors' formation and/or operation in such jurisdictions in which the Debtors are authorized to conduct business.

**1.52** "<u>Person</u>" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**1.53** "<u>Petition Date</u>" shall mean August 26, 2021.

**1.54** "<u>Plan</u>" shall mean this *Joint Plan of Reorganization of NESV Ice, LLC, NESV Swim, LLC, NESV Tennis, LLC, NESV Land East, LLC, NESV Field, LLC, NESV Hotel, LLC, NESV Land, LLC, Ashcroft Sullivan Sports Village Lender, LLC, and Shubh Patel, LLC*, including, without limitation, all exhibits, supplements, appendices and schedules to the Plan, either in their present form or as the same may be altered, amended or modified from time to time.

806286

**1.55**   "Plan Contribution" shall mean:

(a)   by ASVL, the release of ASVL's Liens against the Debtors' Assets and the conversion of ASVL's Claims against the Debtors into equity in NESV Holding; and

(b)   by SP: (i) conversion of the DIP Loans to Equity Interests in NESV Holding, (ii) SP's provision of funds under the Plan to pay all Allowed Administrative Expense Claims, (iii) SP's provision of funds under the Plan to make the Plan Payment, and (iv) SP's provision of working capital to the Reorganized Debtors to facilitate, among other things, the payment of Allowed Claims in accordance with the Plan.

**1.56**   "Plan Interest Rate" shall mean interest at a rate of four and one-quarter percent (4.25%) per annum, or such interest rate, as determined by the Bankruptcy Court, necessary to provide the holder of an Allowed Secured Claim with the indubitable equivalent of such Claim.

**1.57**   "Plan Loan" shall mean a loan by SP to the Reorganized Debtors in an amount equal to all Allowed Secured Real Estate Tax Claims and the payment to SHS set forth in section 4.2(c)(i)(A) of the Plan.

**1.58**   "Plan Payment" shall mean a cash payment, within five (5) Business Days of the Effective Date, equal to: (a) for Ice, the lesser of five percent (5%) of the aggregate Allowed General Unsecured Claims against Ice, or $125,000.00, and (b) for each of the remaining Debtors, the lesser of five percent (5%) of the aggregate Allowed General Unsecured Claims against such Debtor, or $1,000.00; provided that, there shall be no Plan Payment for a Debtor unless there is at least one (1) Allowed General Unsecured Creditor against such Debtor.

**1.59**   "Plan Supplement" shall mean the compilation of documents, agreements, papers, instruments and forms of documents associated with the Plan that will be filed in connection with the confirmation of the Plan.

**1.60**   "Priority Claims" shall mean all Claims, if any, entitled to priority under section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

**1.61**   "Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.62**   "Professionals" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.63**   "Professional Fee Claims" shall mean the fees and expenses of Professionals under sections 330, 331, or 503 of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

806286

**1.64** "Property" shall mean collectively and with reference to a specific Debtor, all real and personal property owned by the Debtors. All references to the "Property" shall be deemed to mean all or any portion of such Property.

**1.65** "Proponents" shall mean, collectively, ASVL, SP and the Debtors.

**1.66** "Pro Rata" shall mean: (a) when used with reference to a distribution of property under the Plan, proportionately so that with respect to a particular Allowed Claim, the ratio of (i)(1) the amount of property distributed on account of such Claim to (2) the amount of such Claim, is the same as the ratio of (ii)(1) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (2) the amount of all Allowed Claims in that Class; and (b) when used with reference to a Lien, proportionately so that with respect to a particular Lien holder, to the ratio of (i)(1) the amount of property to be received from the liquidation of collateral securing such Lien to (2) the amount of the Lien holder's Allowed Secured Claim, is the same as the ratio of (ii)(1) the amount of property to be received from the liquidation of collateral securing such Lien to all holders of the Lien to (2) the amount of the Allowed Secured Claims of all holders of the Lien.

**1.67** "Release Price" shall mean for: (a) Swim, $495,000.00, (b) Tennis, $1,260,000.00, (c) Land East, $1,305,000.00, (d) Field, $1,170,000.00, (e) Hotel, $630,000.00, and (f) Land, $1,350,000.00.

**1.68** "Reorganized Debtors" shall mean the Debtors, from and after the Effective Date, as recapitalized, reconstituted and reorganized pursuant to the Plan and any associated documents.

**1.69** "Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

**1.70** "Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.71** "Secured Real Estate Tax Claims" shall mean real estate tax claims secured by Liens against the respective Debtors' real property.

**1.72** "SHS" shall mean SHS ACK, LLC and all of its Affiliates, subsidiaries and any other party claiming through SHS ACK, LLC.

**1.73** "SHS Subordinated Claims" shall mean any of SHS' Claims against the Debtors that are equitably subordinated by a Final Order.

**1.74** "SP" shall mean Shubh Patel, LLC.

**1.75** "Swim" shall mean NESV Swim, LLC, one of the Debtors and a debtor-in-possession.

**1.76** "Tennis" shall mean NESV Tennis, LLC, one of the Debtors and a debtor-in-possession.

**1.77** "Voting Deadline" shall mean the deadline for submitting ballots with respect to the Plan that is established by the Bankruptcy Court.


# ARTICLE II

## TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS

**2.1** **Non-Classification.**

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against each Debtor are not classified for the purposes of voting on, or receiving distributions under, the Plan. All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

**2.2** **Administrative Expense Claims.**

(a) General. Except for Professional Fee Claims and except as otherwise agreed to by the Debtors and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the later of: (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms; and (ii) the Effective Date.

(b) U.S. Trustee's Fees. The outstanding fees due to the United States Trustee pursuant to 11 U.S.C. § 1930 shall be paid in full on or before the Effective Date.

(c) Professional Compensation and Expense Reimbursement Claims.

    (i)    Within thirty (30) days after the Effective Date, each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date. Any such application granted by the Bankruptcy Court shall be paid: (1) within fifteen days of the entry of the order of the Bankruptcy Court approving such application, unless a stay of the order approving the application is obtained; or (2) upon such other terms as may be mutually agreed upon between the Professional and the Proponents or Reorganized Debtors.

    (ii)    All fees and expenses of Professionals for services rendered after the Effective Date shall be paid by the Reorganized Debtors upon receipt of reasonably detailed invoices in such amounts and on such terms as such Professional and the Reorganized Debtors may agree. No further order or

authorization from the Bankruptcy Court shall be necessary to permit the Reorganized Debtors to pay the fees and expenses of Professionals for services rendered after the Effective Date.

**2.3     Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim against each Debtor, if any, shall be paid, at the sole election of the Proponents, either: (a) upon such terms as may be agreed to between the Debtors and the holder of an Allowed Priority Tax Claim; (b) in full in Cash on the Effective Date; or (c) in installment payments of Cash commencing on the Effective Date and (i) of a total value as of the Effective Date equal to the Allowed amount of such Claim, (ii) over a period ending not later than five (5) years from the Petition Date, and (iii) in a manner not less favorable than the most favored General Unsecured Claim under the Plan.


# ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The Claims against and Equity Interests in the Debtors are categorized below pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is placed in a particular Class for the purpose of voting on the Plan, and only to the extent that such Claim is Allowed for voting purposes in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.  All Classes of claims and Equity Interests with respect to each Debtor are separately classified in their own distinct sub-classes, sub-class A for Ice, sub-class B for Swim, sub-class C for Tennis, sub-class D for Land, sub-class E for Field, sub-class F for Hotel and sub-class G for Land East.  Nothing in the Plan is intended to effectuate a substantive consolidation of the Debtors or their Estates.

### 3.1    Claim and Equity Interest Categories.

Claims against and Equity Interests in the Debtors have been classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 A - G | Secured Real Estate Tax Claims | Unimpaired | No |
| 2 A - G | SHS Secured Claims | Impaired | Yes |
| 3 A | CSM Secured Claims | Impaired | Yes |
| 4 A - F | ASVL Secured Claims | Impaired | Yes |
| 5 A – G | Priority Claims | Unimpaired | No |
| 6 A – G | General Unsecured Claims | Impaired | Yes |
| 7 A - G | Subordinated SHS Claims | Impaired | No |
| 8 A - G | Equity Interests | Impaired | No |

### 3.2    Elimination of Vacant Classes.

Any Class of Claims or Equity Interests that does not contain, as of the Confirmation Date, a holder of an Allowed Claim or Equity Interest, or a holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### ARTICLE IV

### TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1    Classes 1A – 1G – Secured Real Estate Tax Claims.

(a)    <u>Classification</u>.  Classes 1A through 1G consist of Secured Real Estate Tax Claims against the Debtors, as applicable.

(b)    <u>Impairment and Voting</u>.  The Secured Real Estate Tax Claims are unimpaired under the Plan and the holders of such Claims are not entitled to vote to accept or reject the Plan.

806286

(c)   <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed Secured Real Estate Tax Claims, the holders of such Claims shall receive payment of such Claims, at the sole election of the Proponents, either: (i) in full in Cash, from the Plan Loan, on the Effective Date; (ii) upon such terms as may be agreed to between the Proponents and the holder of an Allowed Secured Real Estate Tax Claim; or (iii) in full, in installment payments of Cash commencing on the Effective Date and (1) of a total value as of the Effective Date equal to the Allowed amount of such Claim, (2) over a period ending not later than five (5) years from the Petition Date, and (3) in a manner not less favorable than the most favored General Unsecured Claim under the Plan.

(d)   <u>Retention of Liens</u>.  To secure the payment of Allowed Secured Real Estate Tax Claims, the holders of such Claims shall retain their Liens as of the Petition Date.

(e)   <u>Discharge of Liens</u>.  Upon payment in full of an Allowed Secured Real Estate Tax Claim: (i) all Liens securing the Allowed Secured Real Estate Tax Claim shall be deemed canceled, discharged and released, and (ii) the holder of the Allowed Secured Real Estate Tax Claim shall be required to deliver to the Reorganized Debtors, within three (3) Business Days (or within such period agreed to by the Reorganized Debtors) of the payment in full of the Allowed Secured Real Estate Tax Claim, all documents necessary to effect the discharge and release of the Liens that secure the Allowed Secured Real Estate Tax Claims.

**4.2   Class 2A – 2G – SHS Secured Claims.**

(a)   <u>Classification</u>.  Classes 2A through 2G consist of SHS' Secured Claims against the Debtors.

(b)   <u>Impairment and Voting</u>.  Classes 2A through 2G are impaired and the holder of the SHS Secured Claims shall be entitled to vote to accept or reject the Plan.

(c)   <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed SHS Secured Claims, the holder of the Allowed SHS Secured Claims shall receive payment in full of such Claims, at the sole election of the Proponents, by one of the following methods:

(i)   (A) within five (5) Business Days of the Effective Date, a payment of $11,500,000.00 On Account,

(B) from the Effective Date until the determination of the Allowed SHS Secured Claims, accrued interest on the Net Asserted SHS Secured Claims, calculated based on the Plan Interest Rate,

806286

(C) from the Effective Date until the determination of the Allowed SHS Secured Claims, monthly payments of interest only on an amount equal to the Estimated SHS Secured Claims less the payment set forth in section 4.2(c)(i)(A) of the Plan, calculated based on the Plan Interest Rate, with such interest only payments commencing on the first day of the first full month following the Effective Date, and

(D) upon the determination of the Allowed SHS Secured Claims, payment of such Claims through monthly payments, commencing on the first day of the first full month following such determination, consisting of (I) principal computed on the basis of an amortization schedule of twenty (20) years from such determination, and (II) interest calculated based on the Plan Interest Rate, with the unpaid balance of such Claims due on the tenth (10th) anniversary of the Effective Date, provided that the Allowed SHS Secured Claims may be pre-paid without any penalty or charge;

    (ii)    in cash on the Effective Date equal to the amount of the Allowed SHS Secured Claims; or

    (iii)    by such treatment as is agreed upon in writing between the Proponents and the holder of the Allowed SHS Secured Claims.

(d)    <u>Estimated SHS Secured Claims</u>.  The Proponents or SP shall file a motion to estimate under section 502(c) of the Bankruptcy Court, as of the Confirmation Hearing, the SHS Secured Claims, and shall request the hearing on that motion be held at the Confirmation Hearing.

(e)    <u>Loan Documents</u>.  As of the Effective Date, SHS' Loan Documents shall be deemed amended and restated, without further action, as necessary to reflect and incorporate the terms of the Plan.  To the extent that the SHS Loan Documents contain any terms, covenants, representations and warranties, and/or remedies that impose obligations upon the Debtors that are inconsistent with or more expansive than the terms of the Plan, such terms, covenants, representations and warranties, and/or remedies are deemed cancelled and any obligations of the Debtors and/or Claims by SHS arising from such terms, covenants, representations and warranties, and/or remedies shall be discharged upon the Effective Date.  To the extent that there is any inconsistency between the Plan and any of the SHS Loan Documents, the terms of the Plan shall control.

(f)    <u>Retention of Liens</u>.  To secure the payment of the Allowed SHS Secured Claims, the holder of such Claims shall retain its Liens to same extent, priority and validity of such Liens as they existed on the Petition Date.

806286

(g) <u>Discharge of Liens</u>. Upon payment in full of an Allowed SHS Secured Claim: (i) all Liens securing the Allowed SHS Secured Claim shall be deemed canceled, discharged and released, and (ii) the holder of the Allowed SHS Secured Claim shall be required to deliver to the Reorganized Debtors, within three (3) Business Days (or within such period agreed to by the Reorganized Debtors) of the payment in full of the Allowed SHS Secured Claim, all documents necessary to effect the discharge and release of the Liens that secure the Allowed SHS Secured Claim. Notwithstanding any other provision of the Plan, at any time following the Effective Date, a Reorganized Debtor may discharge all Liens on its Assets that secure the Allowed SHS Secured Claim against such Reorganized Debtor by paying the holder of the Allowed SHS Secured Claims the lesser of the applicable Release Price or the balance of the Allowed SHS Secured Claims. If a Reorganized Debtor pays a Release Price prior to the determination of the Allowed SHS Secured Claims, the Release Price shall be held in escrow until such determination.

**4.3    Class 3A – CSM Secured Claims.**

(a) <u>Classification</u>. Class 3A consists of CSM's Secured Claims against the Debtors.

(b) <u>Impairment and Voting</u>. Class 3A is impaired and the holder of the CSM Secured Claims shall be entitled to vote to accept or reject the Plan.

(c) <u>Claim Treatment</u>. In full and final satisfaction, settlement, discharge and release of the Allowed CSM Secured Claims, the holder of the Allowed CSM Secured Claims shall receive payment in full of such Claims, at the sole election of the Proponents, by one of the following methods:

(i) (A) from the Effective Date until the determination of the Allowed CSM Secured Claim, monthly payments of interest only on an amount equal to the Estimated CSM Secured Claim, calculated based on the Plan Interest Rate, with such interest only payments commencing on the first day of the first full month following the Effective Date,

(B) through monthly payments, commencing on the first day of the first full month following the determination of the Allowed CSM Secured Claims, consisting of (I) principal computed on the basis of an amortization schedule of twenty (20) years from such determination, and (II) interest calculated based on the Plan Interest Rate, with the unpaid balance of such Claims due on the tenth (10th) anniversary of the Effective Date, and

806286

(C) through the granting of a Lien, junior to SHS' Liens and the Liens securing the Plan Loan, on the real property owned by Swim, Tennis, Land East, Field, Hotel and Land;

　　　　(ii)　　in cash on the Effective Date equal to the amount of the Allowed CSM Secured Claims; or

　　　　(iii)　　by such treatment as is agreed upon in writing between the Proponents and the holder of the Allowed CSM Secured Claims.

　　(d)　　Estimation of CSM Secured Claims.  The Proponents or SP shall file a motion under section 502(c) of the Bankruptcy Court to estimate, as of the Confirmation Hearing, the CSM Secured Claims, and shall request the hearing on that motion be held at the Confirmation Hearing.

　　(e)　　Deficiency Claim.  Any Deficiency Claim held by CSM shall be treated as a Class 6 Claim.

　　(f)　　Lien Documents.  As of the Effective Date, any documents evidencing CSM's Liens shall be deemed amended and restated, without further action, as necessary to reflect and incorporate the terms of the Plan.  To the extent that such documents, and any applicable non-bankruptcy law associated with such documents, contain any terms, covenants, representations and warranties, and/or remedies that impose obligations upon the Debtors that are inconsistent with or more expansive than the terms of the Plan, such terms, covenants, representations and warranties, and/or remedies are deemed cancelled and any obligations of the Debtors and/or Claims by CSM arising from such terms, covenants, representations and warranties, and/or remedies shall be discharged upon the Effective Date.  To the extent that there is any inconsistency between the Plan and any of the documents evidencing CSM's Liens, and/or any applicable non-bankruptcy law associated with such documents, the terms of the Plan shall control.

　　(g)　　Retention of Liens.  To secure the payment of the Allowed CSM Secured Claims, the holder of such Claims shall retain its Liens only on the real property owned by Ice to same extent, priority and validity of such Liens as they existed on the Petition Date.

　　(h)　　Discharge of Liens.  Upon payment in full of the Allowed CSM Secured Claims: (i) all Liens securing the Allowed CSM Secured Claims shall be deemed canceled, discharged and released, and (ii) the holder of the Allowed CSM Secured Claims shall be required to deliver to the Reorganized Debtors, within three (3) Business Days (or within such period agreed to by the Reorganized Debtors) of the payment in full of the Allowed CSM Secured Claims, all documents necessary to effect the discharge and release of the Liens that secure the Allowed CSM Secured

Claims. Notwithstanding any other provision of the Plan, at any time following the Effective Date, a Reorganized Debtor (other than Ice) may discharge all Liens on its Assets that secure the Allowed CSM Secured Claim against such Reorganized Debtor by paying CSM the applicable Release Price.

**4.4    Class 4A – 4F – ASVL Secured Claims.**

(a)    <u>Classification</u>. Classes 4A through 4F consist of ASVL's Secured Claims against the Debtors.

(b)    <u>Impairment and Voting</u>. Classes 4A through 4F are impaired and the holder of the ASVL Secured Claims shall be entitled to vote to accept or reject the Plan.

(c)    <u>Claim Treatment</u>. In full and final satisfaction, settlement, discharge and release of the Allowed ASVL Secured Claims, the holder of the Allowed ASVL Secured Claims shall receive: (i) seventeen percent (17%) of the membership interests in NESV Holding, to be issued on the Effective Date, and which will entitle ASVL to an internal rate of return of four and three-quarters percent (4.75%) on its Secured Claims, and (ii) the release, on the Effective Date, of any Avoidance Actions against ASVL. The organizational documents for NESV Holding, as well as any associated documents and agreements, will be included in the Plan Supplement.

(d)    <u>Discharge of Claims</u>. On the Effective Date, all of ASVL's Claims against the Debtor shall be discharged and released pursuant to Article IX of the Plan.

(e)    <u>Discharge of Liens</u>. On the Effective Date: (i) all Liens securing the Allowed ASVL Secured Claims shall be deemed canceled, discharged and released, and (ii) the holder of the Allowed ASVL Secured Claims shall be required to deliver to the Reorganized Debtors, within three (3) Business Days (or within such period agreed to by the Reorganized Debtors) of the Effective Date, all documents necessary to effect the discharge and release of the Liens that secure the Allowed ASVL Secured Claims.

**4.5    Class 5A – 5G – Priority Claims.**

(a)    <u>Classification</u>. Classes 5A through 5G consist of the Priority Claims against the Debtors.

(b)    <u>Impairment and Voting</u>. The Priority Claims are unimpaired under the Plan, and the holders of such Claims are not entitled to vote to accept or reject the Plan.

(c)    <u>Claim Treatment</u>. In full and final satisfaction, settlement, discharge and release of the Allowed Priority Claims, the holders of the Allowed Priority

Claims shall be paid in full either: (i) in accordance with any pre-petition agreements between the holder of the Allowed Priority Claim and the respective Debtor, (ii) on the later to occur of the Effective Date or the date the Claim becomes an Allowed claim, or (iii) in accordance with any post-Petition Date agreement between the claimant and the respective Debtor.

**4.6    Class 6A – 6G – General Unsecured Claims.**

(a)    <u>Classification</u>.  Classes 6A through 6G consist of the General Unsecured Claims against the Debtors.

(b)    <u>Impairment and Voting</u>.  Classes 6A through 6G are impaired under the Plan and each holder of a General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(c)    <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed General Unsecured Claims, each holder of an Allowed General Unsecured Claim shall receive a Pro Rata share of: (a) the Plan Payment paid by the Debtor against whom such Claim has been Allowed, and (b) fifty percent (50%) of the Net Proceeds of any Avoidance Actions recovered by the Debtor against whom such Claim has been Allowed.

**4.7    Class 7A – 7G – Subordinated SHS Claims.**

(a)    <u>Classification</u>.  Classes 7A through 7G consist of the Subordinated SHS Claims.

(b)    <u>Impairment and Voting</u>.  Classes 7A through 7G are impaired under the Plan and the holder of the Subordinated SHS Claims is deemed to reject the Plan.

(c)    <u>Treatment</u>.  The Subordinated SHS Claims and any Liens securing those Claims shall be discharged and released as set forth in Article IX of the Plan.

**4.8    Class 8A – 8G – Equity Interests.**

(d)    <u>Classification</u>.  Classes 8A through 8G consist of the Equity Interests in the Debtors.

(e)    <u>Impairment and Voting</u>.  Classes 8A through 8G are impaired under the Plan and each holder of an Equity Interest is deemed to reject the Plan.

(f)    <u>Treatment</u>.  All Equity Interests in the Debtors shall be cancelled on the Effective Date, and 100% of the new Equity Interests in the Reorganized Debtors shall be issued to NESV Holding.

806286

**4.9    Reservation of Rights.**

The Debtors reserve the right to, among other things, (a) contest the right of the holder of any Claim to vote on the Plan, or designate the vote of the holder of any Claim, (b) contest the right of the holder of any Claim to receive distributions under the Plan, (c) seek to subordinate any Claim for inequitable conduct or otherwise, and (d) seek to estimate any claim for any purposes under the Plan.


**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1    Plan Implementation.**

(a)    The Plan will be funded by the Plan Loan, the Plan Contribution and from the Debtors' continued operations.  Upon the Effective Date, the Debtors are authorized to take all action permitted by their Organization Documents (as applicable) and by the law, including, without limitation, to use their Cash and other Assets for all purposes provided for in the Plan and in their operations, to borrow funds, to obtain new financing secured by their Assets (provided such financing is not secured by a Lien senior to the Liens retained by certain creditors under the Plan), and to grant liens on their unencumbered Assets.  Eighty-three percent (83%) of the Equity Interests in NESV Holding shall be issued to SP, or its designee, on the Effective Date.

(b)    The Plan Loan.  On the Effective Date, SP shall make the Plan Loan to the Reorganized Debtors to be used to pay the Allowed Secured Real Estate Tax Claims and to make the payment required by section 4.2(c)(i)(A) of the Plan.  The Plan Loan shall be secured by Liens on all of the Debtors' Assets that are junior only to the Liens retained by SHS.  Commencing on the first full month following the 180th day after the Effective Date, the Reorganized Debtors shall commence making monthly payments to SP of interest only, calculated using the Plan Interest Rate.   The Reorganized Debtors shall make such interest only payments on the Plan Loan until any Allowed Secured Claims held by SHS have been paid in full, and shall thereafter make monthly payments to SP on the Plan Loan consisting of (i) principal computed on the basis of an amortization schedule of twenty (20) years from such determination, and (ii) interest calculated based on the Plan Interest Rate, with the unpaid balance of such Claims due on the tenth (10th) anniversary of the commencement of such monthly payments.  The Reorganized Debtors shall execute such documents as are necessary to evidence the Plan Loan and the Liens securing the Plan Loan.

(c)    The Plan Contribution.  On the Effective Date, SP shall make its Plan Contribution to the Reorganized Debtors.

(d)    The DIP Loans.  Upon the Effective Date, the DIP Loans shall be converted to Equity Interests in NESV Holding.

**5.2    Sales of Assets.**

Upon the entry of the Confirmation Order, the Reorganized Debtors are authorized, pursuant to section 1123(a)(5) of the Bankruptcy Code and without further court order, to sell any or all of their Assets; provided that any sale of real property must be for an amount of not less than the applicable Release Price.  All such sales of Assets shall (i) constitute legal, valid and effective transfers of property of the Reorganized Debtors to the buyer, and (ii) vest in the buyer all of the Reorganized Debtors' right, title and interest in the Asset transferred free and clear of all Liens, Claims, encumbrances and interests of any entity.  Following any such sale, all liens, claims, encumbrances and interests shall attach to the Net Proceeds of the sale to the same extent, priority and validity as is set forth in the Plan.

**5.3    Execution of Necessary Documents; Amendment of Documents.**

(a)    Confirmation of the Plan shall constitute authorization by the Bankruptcy Court for the Debtors and/or the Reorganized Debtors to enter into all documents, instruments and agreements necessary to effectuate the terms of the Plan.  The form and/or content of the documents, instruments and agreements necessary to effectuate the terms of the Plan shall be subject to the approval of the Debtors and/or the Reorganized Debtors, in their sole discretion.

(b)    As of the Effective Date, all pre-Confirmation Date documents and agreements (whether written or oral) between the Debtors and any party shall be deemed to be amended as necessary to effectuate and conform to the terms of this Plan.  To the extent that there is any inconsistency between the Plan and any such documents and agreements, the terms of the Plan shall control.

(c)    All matters provided for in the Plan involving any corporate action required by the Debtors or Reorganized Debtors in connection with the Plan shall be deemed to have occurred, and shall be in effect, without any requirement of further action by the Reorganized Debtors, their agents, representatives, members, managers, officers, directors or Affiliates.

**5.4    Organization Documents and Good Standing.**

As of the Effective Date, the Debtors' respective Organization Documents shall be amended as necessary to effectuate the terms of the Plan and shall become the Organization Documents of the Reorganized Debtors.  To the extent that there is any inconsistency between the Plan and any of the Organization Documents, the terms of the Plan shall control.  To the extent any of the Debtors is not in compliance as of the Effective Date with any state or local law requirements necessary to remain as an organized legal entity in good standing and/or remain authorized as an organized legal entity to conduct business in any jurisdiction, the Debtors and/or the Reorganized Debtors, as the case may be, shall be deemed to be in compliance with any such laws if they comply with such laws within six months after the Effective Date.  To the extent necessary, each of the Debtors' respective Organization Documents shall be deemed amended to prohibit the issuance of nonvoting equity securities, and to provide, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another

class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

### 5.5 Revesting of Property.

Except as otherwise provided in the Plan, each of the Reorganized Debtors, as of the Effective Date, shall be vested with all of their respective assets. Except expressly provided in the Plan or in a Final Order of the Bankruptcy Court, no Assets shall be deemed abandoned and no defense, set-off, counterclaim or right of recoupment of any of the Debtors shall be deemed waived, released or compromised.

### 5.6 Preservation and Resolution of Causes of Action.

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Reorganized Debtors shall exclusively retain and may enforce, and the Debtors and the Reorganized Debtors expressly reserve and preserve for these purposes, in accordance with sections 1123(a)(5)(A) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that the Debtors or their respective Estates may hold against any person or entity. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation or consummation of the Plan. After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtors are authorized, without further Bankruptcy Court order, to compromise, settle and/or otherwise dispose of any Causes of Action.

### 5.7 Trustee Powers.

Upon the Effective Date, the Reorganized Debtors shall each be vested with the standing of and with all rights, powers and benefits afforded to a "trustee" under the Bankruptcy Code.

### 5.8 Default.

No event of default under the Plan shall occur unless, in the event of a breach of the Debtors' or the Reorganized Debtors' obligations under the Plan, the holder of the Allowed Claim asserting the default shall provide written notice of such breach to the Reorganized Debtors and such breach is not cured: (a) in the event of a breach that can be cured by the payment of a sum of money, within ten (10) days of the Reorganized Debtors' receipt of such notice; and (b) for any other breach, within thirty (30) days of the Reorganized Debtors' receipt of such notice, provided that, if such non-monetary breach cannot reasonably be cured within such 30-day period and the Reorganized Debtors have commenced curing such breach and continue to cure such breach, the thirty (30) day period shall be extended for such time as is reasonably necessary to cure such breach.

# ARTICLE VI

# DISTRIBUTIONS ON CLAIMS AND RESOLUTION OF DISPUTED CLAIMS

### 6.1    Method of Distributions Under the Plan.

(a)    <u>In General</u>.  Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made by, or on behalf of, the Reorganized Debtors to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Reorganized Debtors have been notified in writing of a change of address as of the Distribution Record Date, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.  The Reorganized Debtors shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b)    <u>Form of Distributions</u>.  Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Reorganized Debtors pursuant to the Plan shall be made by check or, upon agreement of the parties, by wire transfer.

(c)    <u>Distributions to be on Business Days</u>.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)    <u>Fractional Dollars</u>.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less, and rounding up in the case of more than $0.50).

(e)    <u>Distributions to Holders as of the Distribution Record Date</u>.  As of the close of business on the Distribution Record Date, the claims register shall be closed.  The Reorganized Debtors shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.  This section 6.1(e) of the Plan shall not be deemed to bar or restrict the assignment of any Claim.

### 6.2    Allowance of and Objections to Claims.

(a)    Any holder of multiple Allowed Claims against more than one Debtor that arise from the contractual, joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances, shall be entitled to one Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claim giving rise to such multiple Claims.  Claims against more than one of the Debtors arising from the same injury, damage, cause of action or common facts shall be Allowed and paid only once as if such Claim were against a single Debtor.

(b)     Except as otherwise specifically provided in the Plan or in an order of the Bankruptcy Court pursuant to section 506(b) of the Bankruptcy Code, no interest shall accrue on or be paid on account of an Allowed Claim.

(c)     Prior to the Effective Date, any objections to Claims against the Debtors shall be prosecuted by the Debtors.  On and after the Effective Date and unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtors shall have the right to the exclusion of all others (except as to the Professionals' applications for allowances of compensation and reimbursement of expenses under section 327 of the Bankruptcy Code and Rule 2014(a) of the Bankruptcy Rules) to make, file, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims. Notwithstanding any other provision of the Plan, the Reorganized Debtors shall not make any distribution on account of any Disputed Claim unless and until such Claim becomes Allowed.

(d)     After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtors are authorized, without further Bankruptcy Court order, to compromise, settle and/or otherwise dispose of any dispute regarding a Claim; provided that, until the Bankruptcy Cases are closed, the Reorganized Debtors shall file a Settlement Notice with respect to any settlement of a disputed Claim.

**6.3     Deadline for Objecting to Claims.**

Except as otherwise provided by order of the Bankruptcy Court, the Debtors, or the Reorganized Debtors as the case may be, may file an objection to a Claim against the Debtors until the later of: (a) the date that such Claim becomes due and payable in accordance with its terms, or (b) ninety (90) days after the Effective Date.

**6.4     Estimation of Claims.**

The Proponents or the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time and for any purpose, including, without limitation, for plan voting, feasibility, allowance and distribution purposes.  If the Bankruptcy Court estimates a Disputed Claim, such estimation shall not preclude the Proponents or the Reorganized Debtors from pursuing any supplemental proceedings to object to any payment of such Claim.  All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court or by agreement between the Debtors or the Reorganized Debtors and the holder of such Disputed Claim.

**6.5     Reversion of Unclaimed Checks.**

The amounts of any checks issued for distributions under the Plan that remain uncashed for a period of 180 days after the date of such distribution shall revert and be vested in the

Reorganized Debtors free and clear of any claim or interest of any holder of a Claim under the Plan.

**6.6     Obligation to Provide Tax Documents.**

No Person entitled to a payment or distribution under the Plan shall receive such distribution or payment until the Person provides the Reorganized Debtors with: (a) a W-9 or similar federal or state tax form, and (b) such other tax forms as are reasonably requested by the Reorganized Debtors (collectively the "Tax Forms").  If any Person holding an Allowed Claim fails to provide a Tax Form to the Reorganized Debtors after two written requests for a Tax Form, such Person's Allowed Claim shall be, on the sixtieth (60th) day following the second written request, disallowed and expunged without further order of the Bankruptcy Court.

**ARTICLE VII**

**VOTING ON THE PLAN AND CRAMDOWN**

**7.1     Voting of Claims.**

Each holder of an Allowed Claim in an impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan.  Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

**7.2     Acceptance by Impaired Classes.**

An impaired class of Claims or Equity Interests shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan. If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

**7.3     Nonconsensual Confirmation.**

If any impaired Class entitled to vote does not accept the Plan by the requisite majorities provided in sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtors reserve the right (a) to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code; and/or (b) to amend the Plan in accordance with section 12.3 of the Plan.

# ARTICLE VIII

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, POST-PETITION CONTRACTS AND RETIREE AND COMPENSATION BENEFITS

### 8.1 Assumption of Executory Contracts and Unexpired Leases.

Pursuant to sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any executory contract or unexpired lease (excluding insurance policies) that (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (iv) is not designated by the Debtors as being an executory contract or unexpired lease to be rejected at the time of confirmation of this Plan, shall be deemed assumed on the Effective Date. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

### 8.2 Payments Related to The Assumption of Executory Contracts And Unexpired Leases.

(a) <u>Payment of Claims Arising From Assumed Contracts And Leases</u>. Any Allowed Claims arising from the assumption of an executory contract or unexpired lease will receive, in full and complete satisfaction, settlement, release and discharge of such Claims, payment in the ordinary course of business as and when such Allowed Claims become due pursuant to such executory contract or unexpired lease.

(b) <u>Disputed Claims and Bar Date</u>. If there is a dispute regarding (i) the amount of any claim arising from the assumption or rejection of an executory contract or unexpired lease, (ii) the ability of the applicable Debtor or any assignee to provide "adequate assurance of future performance," within the meaning of section 365 of the Bankruptcy Code, under a contract or lease to be assumed, or (iii) any other matter pertaining to the assumption or assumption and assignment of any contract or lease, the payment of any Claim related to the foregoing will be made following entry of a Final Order resolving the dispute and approving the assumption.

### 8.3 Rejection Damage Claims.

If the rejection of an executory contract or unexpired lease by the Debtors results in a Claim by the other party or parties to such contract or lease, any claim for damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estates, the Reorganized Debtors and their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before thirty (30) days following the later to occur of: (a) the rejection of such executory contract or unexpired lease, and (b) the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan. The Debtors or the Reorganized Debtors, as the case may be, shall have the right to object to any such Claim for rejection damages in accordance with the Plan.

806286

# ARTICLE IX

# RELEASE AND DISCHARGE OF CLAIMS

## 9.1     Discharge.

Except as otherwise expressly provided in section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final discharge as against the Debtors and the Reorganized Debtors of any debt or obligation of the Debtors that arose before the Effective Date, and any debt of the Debtors of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against the Debtors or their Estates of any nature, including, without limitation, any setoff claims and/or any interest accrued on any Claim from and after the Petition Date, whether or not: (a) a proof of claim based on such debt, obligation or Equity Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is Allowed under section 502 of the Bankruptcy Code, or (c) the holder of such Claim has accepted the Plan.

## 9.2     Injunction Relating to the Plan.

As of the Effective Date, all Persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtors, their Estates or the Reorganized Debtors, on account of, or respecting any Claims, debts, rights, obligations, Causes of Action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted under the Plan.

## 9.3     Releases.

Except as otherwise set forth in the Plan, as of the Effective Date, in consideration for, among other things, the obligations of the Debtors under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, (a) each holder of a Claim or Interest that votes in favor of the Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Person that has held, holds or may hold a Claim or Equity Interest or at any time was a creditor or equity holder of any of the Debtors and that does not vote on the Plan or votes against the Plan, in each case will be deemed to forever release, waive and discharge all claims (including any derivative claims), obligations, suits, judgments, damages, demands, rights, causes of action and liabilities (other than the right to enforce the Reorganized Debtors' obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered, or that remain in effect, under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to a Debtor, the Bankruptcy Cases or the Plan that such entity has, had or may have against any Debtor, the Estates, the Estate's Assets, the

Reorganized Debtors and/or the Reorganized Debtors' Assets. Nothing in this section 9.3 of the Plan shall be deemed to provide a release to a non-Debtor third party.

### 9.4 Cancellation of Existing Indebtedness and Liens.

Except as is otherwise specifically provided in the Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtors, together with any and all Liens securing same, including without limitation any rights of setoff, shall be canceled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the obligations of the Debtors thereunder shall be deemed cancelled, discharged and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests, including any rights to any collateral thereunder, will revert to the Reorganized Debtors. To the extent deemed necessary or advisable by the Reorganized Debtors, any holder of a Claim shall promptly provide the Reorganized Debtors with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

### 9.5 Exculpation.

Except as otherwise set forth in the Plan, neither the Debtors, the Reorganized Debtors, nor any of their respective present or former members, managers, officers, directors, employees, general or limited partners, advisors, attorneys, agents, successors or assigns, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of these Bankruptcy Cases, the pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan occurring prior to the Effective Date, provided that the terms of this section 9.5 of the Plan shall not apply to any liability for willful misconduct or ultra vires acts.

### 9.6 Setoff.

Except as otherwise provided in the Plan, nothing contained in the Plan shall constitute a waiver or release by the Debtors, the Estates and/or the Reorganized Debtors of any rights of setoff each may have against any Person.

806286

# ARTICLE X

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

### 10.1 Conditions Precedent to Effectiveness.

Subject to section 10.2 of the Plan, the following are conditions precedent to the occurrence of the Effective Date:

(a) The Confirmation Order, in form and substance reasonably acceptable to the Debtors shall have been entered by the Bankruptcy Court and shall not be subject to any stay; and

(b) The Confirmation Order shall have become a Final Order.

### 10.2 Waiver of Conditions.

Except for the condition set forth in sections 10.1(a) of the Plan, the Proponents may (a) in their sole discretion, waive the condition precedent to the effectiveness of the Plan set forth in section 10.1(b) by filing a notice of waiver with the Bankruptcy Court. The failure to satisfy or waive any condition precedent to the occurrence of the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

### 10.3 Effect of Non-occurrence of Conditions to the Effective Date.

If the Effective Date has not occurred within six (6) months after the Confirmation Date, then except as extended by the Proponents in their sole discretion, the Plan shall terminate. Upon termination, the Plan shall be null and void in all respects and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors, or (b) prejudice in any manner the rights of the Debtors or any other Person or constitute an admission, acknowledgement, offer or undertaking by the Debtors or any other Person.

### 10.4 Notice of Occurrence of Effective Date.

As soon as practicable following the Effective Date, the Debtors shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date, that specifies, among other things, the date on which the Effective Date occurred.

806286

# ARTICLE XI

# RETENTION OF JURISDICTION

**11.1**    From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the Bankruptcy Cases and the Plan, as legally permissible, pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code including, without limitation:

(a)    To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification or estimation of any Claims or Equity Interests or any controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or to estimate any Disputed Claim;

(b)    To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses, authorized pursuant to the Plan or the Bankruptcy Code;

(c)    To hear and determine any and all applications (whether or not pending at or on the Confirmation Date) related to the rejection, assumption or assumption and assignment of executory contracts and unexpired leases to which any Debtor is a party, and to hear, determine and allow any Claims resulting therefrom;

(d)    To enforce and adjudicate the provisions of the Plan subject to the terms of the Plan;

(e)    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)    To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

(g)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(h)    To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(i)    To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(j)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

(k)    To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(l)    To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions or other provisions;

(m)    To hear and determine any Claims, rights, demands and Causes of Action arising prior to the Effective Date preserved pursuant to the Plan; and

(n)    To enter an order and/or final decree concluding the Bankruptcy Cases.


# ARTICLE XII

# MISCELLANEOUS

## 12.1    Continuation of Injunctions or Stays Until Effective Date.

All injunctions or stays provided for in the Bankruptcy Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, except as otherwise ordered by the Bankruptcy Court upon appropriate motion and with appropriate notice.

## 12.2    Exemption from Transfer Taxes.

In accordance with section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, and the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

### 12.3　Amendment or Modification of the Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by the Proponents at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Proponents shall have complied with section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Proponents or the Reorganized Debtors may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan Document.

### 12.4　Severability.

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Proponents, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

### 12.5　Revocation or Withdrawal of the Plan.

The Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Proponents revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

### 12.6　Binding Effect.

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**12.7 Notices.**

All notices, requests and demands to or upon the Debtors or the Reorganized Debtors shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

If to the Reorganized Debtors:

Shubh Patel, LLC
281 Lamport Blvd
Staten Island, NY -10305

Attention: Dharmesh Patel

With copies to:

Murphy & King, Professional Corporation
28 State Street, Suite 3101
Boston, MA 02109
Harold B. Murphy, Esq.
D. Ethan Jeffery, Esq.
Telephone: (617) 423-0400
E-mail: HMurphy@murphyking.com
E-mail: EJeffery@murphyking.com

and

Law Office of Donald R. Lassman
P.O. Box 920385
Needham, MA  02492
Donald R. Lassman, Esq.
Telephone: (781) 455-8400
Email: don@lassmanlaw.com

**12.8 Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

**12.9 Withholding and Reporting Requirements.**

In connection with the consummation of the Plan, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign

taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 12.10  Post-Confirmation Fees, Final Decree.

Each Reorganized Debtor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, each Reorganized Debtor will serve the United States Trustee with a monthly financial report for each month (or portion thereof) these bankruptcy cases remain open.  The Reorganized Debtors may request that these bankruptcy cases be closed notwithstanding that there may be proceedings relating to Disputed Claims still pending.  The monthly financial report shall include the following:

(a)  A statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan;

(b)  A summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the Plan;

(c)  The Reorganized Debtors' projections as to their continuing ability to comply with the terms of the Plan;

(d)  A description of any other factors which may materially affect the Reorganized Debtors' ability to consummate the Plan; and

(e)  An estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

### 12.11  Headings.

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

[this space intentionally left blank]

806286

**12.12 Inconsistency.**

In the event of any inconsistency between the Plan and the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

NESV Ice, LLC,                                              NESV Swim, LLC,


/s/ *Stuart Silberberg*                                     /s/ *Stuart Silberberg*
By: Stuart Silberberg                                       By: Stuart Silberberg
Its: Manager                                                Its: Manager

NESV Tennis, LLC,                                           NESV Land East, LLC,


/s/ *Stuart Silberberg*                                     /s/ *Stuart Silberberg*
By: Stuart Silberberg                                       By: Stuart Silberberg
Its: Manager                                                Its: Manager

NESV Field, LLC,                                            NESV Hotel, LLC,


/s/ *Stuart Silberberg*                                     /s/ *Stuart Silberberg*
By: Stuart Silberberg                                       By: Stuart Silberberg
Its: Manager                                                Its: Manager

NESV Land, LLC,                                             Shubh Patel, LLC,


/s/ *Stuart Silberberg*                                     /s/ *Dharmesh Patel*
By: Stuart Silberberg                                       By: Dharmesh Patel
Its: Manager                                                Its: Manager


[signatures cont'd on next page]

Ashcroft Sullivan Sports Village Lender, LLC,

Counsel for Ashcroft Sullivan Sports Village Lender, LLC,

/s/ *Michael Sullivan*
By: Michael Sullivan
Its: Manager

/s/ *Gary M. Hogan*
Gary M. Hogan, Esq.
Baker, Braverman & Barbadoro, P.C.
300 Crown Colony Drive, Suite 500
Quincy, MA  02169-0904
Telephone: (781) 848-9610
Email: garyh@bbb-lawfirm.com

Counsel for Shubh Patel, LLC,

Counsel for Debtors,

/s/ *D. Ethan Jeffery*
Harold B. Murphy, Esq. (BBO #362610)
D. Ethan Jeffery, Esq. (BBO #631941)
MURPHY& KING, P.C.
One Beacon Street
Boston, MA  02108
Telephone:  (617) 423-0400
Email:  EJeffery@murphyking.com

/s/ *Joseph M. Downes*
Joseph M. Downes III, Esq.
William S. McMahon
DOWNES MCMAHON LLP
215 Lewis Wharf
Boston, MA 02110
Telephone: (617) 600-86935
Email:  jdownes@dmlawllp.com

and

Donald R. Lassman, Esq.
LAW OFFICE OF DONALD R. LASSMAN
P.O. Box 920385
Needham, MA  02492
Telephone: (781) 455-8400
Email: don@lassmanlaw.com

Dated:  February 1, 2022

806286