# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

| | |
|---|---|
| In re:<br><br>**NESV ICE, LLC,** *et al.*, [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-11226-CJP<br><br>Jointly-Administered |

### ORDER ON #727 (A) AUTHORIZING POSTPETITION FINANCING ON PRIORITY SECURED BASIS, AND (B) GRANTING RELATED RELIEF

This matter having come before the Court on the *Motion by Debtors for the Approval of Debtor-in-Possession Financing and Related Relief* (the "**Motion**") filed by the above-captioned debtors and debtors-in-possession (the "**Debtors**"); and the Motion having sought the entry of an order: (a) authorizing the Debtors to obtain secured debtor-in-possession financing (the "**DIP Loan**") from SP NESV, LLC ("**SP**" or the "**DIP Lender**") pursuant to the terms and conditions of the term sheet[2] attached to the Motion as Exhibit A (the "**Term Sheet**"), (b) granting consensual mortgages and security interests to the DIP Lender on the Debtors' assets which are junior the liens of the City of Attleboro (the "**City**"), SHS ACK, LLC ("**SHS**"), and Construction Source Management, LLC ("**CSM**"), and senior to the lien of Ashcroft Sullivan Sports Village Lender ("**ASVL**"), and (c) granting related relief; and the Court having considered the Motion, no objections having been filed thereto; and good and sufficient cause appearing therefor,

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, are as follows: NESV Ice, LLC (1262), NESV Swim, LLC (5919), NESV Tennis, LLC (6937), NESV Land East, LLC (4138), NESV Field, LLC (5539), NESV Hotel, LLC (9151), and NESV Land, LLC (2353).

[2] Capitalized terms not otherwise defined in this order shall have the meanings ascribed to them in the Motion.

THE COURT HEREBY FINDS:

A.  On August 26, 2021 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief (the "**Chapter 11 Cases**") under chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**").

B.  Jurisdiction. The Motion is a "core proceeding" as defined in 28 U.S.C. § 157(b)(2)(D) and (M). The Court has jurisdiction over the Chapter 11 Cases and the property affected by this order pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  Notice. Notice of the relief sought by the Motion and the Hearing were served on: (a) the United States Trustee for the District of Massachusetts (the "**U.S. Trustee**"); (b) each Debtors' twenty (20) largest non-priority unsecured creditors; (c) counsel to the DIP Lender; (d) any party asserting a lien against any of the Debtors' assets; and (d) all known taxing authorities which may assert claims against the Debtors. Such notice constitutes sufficient and adequate notice of the Motion and the relief granted in this order pursuant to the applicable Rules of Bankruptcy Procedure and Massachusetts Local Rules of Bankruptcy Procedure.

D.  The Debtors are in need of the DIP Loan to preserve the value of their assets.

E.  Based on the record before this Court: (i) it appears that the DIP Loan has been negotiated in good faith between the Debtors and the DIP Lender; (ii) it appears that the terms of the DIP Loan are fair and reasonable and reflect the exercise of the Debtors' prudent business judgment; and (iii) the terms of the DIP Loan, as provided in this order, have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The Motion is granted and any objections to the Motion are overruled.

2

2. The DIP Loan is approved, on the terms and conditions set forth in the Term Sheet except as modified by this order, in an amount up to $58,781 to pay monthly interest for the non-Ice Debtors to the City and the monthly interest payment to SHS in the amount of $56,766 due for the month of March 2023, each as set forth in the budget attached to the Motion as <u>Exhibit B</u> plus, in the DIP Lender's sole discretion, up to an additional $100,000 to pay the expenses set forth in the Debtors' approved cash collateral budget (the "**Cash Collateral Expenses**") and the monthly interest payment to SHS in the amount of $56,766 due for the month of March 2023. The amount of the DIP Loan shall include the principal amount advanced by DIP Lender, interest on such amounts at the rates provided for in the Term Sheet, all reasonable attorneys' fees incurred in connection with the negotiation, documentation and Court approval of the DIP Loan, and any reasonable attorneys' or other professional's fees and expenses incurred by DIP Lender in connection with the enforcement of DIP Lender's rights under the DIP Loan. All attorneys' or other professional fees and expenses included in the DIP Loan amount shall be subject to approval by the Court as set forth in paragraph 7.

3. To secure the amounts borrowed by the Debtors pursuant to this order, the DIP Lender is hereby granted: (a) a mortgage on and security interest in the assets (the "**Ice Collateral**") of NESV Ice, LLC ("**Ice**") which is junior to the lien of the City, the lien of SHS, and the lien of CSM, and senior to the lien of ASVL; and (b) mortgages on and security interests in the assets (collectively the "**Non-Ice Collateral**") of each of NESV Swim, LLC, NESV Tennis, LLC, NESV Land East, LLC, NESV Field, LLC, NESV Hotel, LLC, and NESV Land, LLC (collectively the "**Non-Ice Debtors**"), which is junior to the lien of the City and the lien of SHS and senior to the lien of ASVL. The liens in favor of the DIP Lender (collectively, the "**DIP Liens**") shall not attach to nor be satisfied from the proceeds of the Debtors' claims and

causes of action arising under chapter 5 of the Bankruptcy Code, and the terms "Ice Collateral" and "Non-Ice Collateral" shall not include such proceeds.

4. While the Non-Ice Collateral shall secure all amounts borrowed by the Debtors pursuant to this order, the DIP Lender may only assert an unsecured deficiency claim against any Non-Ice Debtor to the extent that amounts borrowed pursuant to this order were actually used to pay obligations of that Non-Ice Debtor.

5. Subject to applicable provisions of the Bankruptcy Code, the DIP Lender may take all actions to enforce its rights during the pendency of these bankruptcy cases provided, however, in the event the automatic stay is lifted or terminated as to the Ice Collateral and the Non-Ice Collateral (collectively the "**Collateral**"): (a) the DIP Lender shall not interfere with SHS' or CSM's Enforcement Actions (as defined below); (b) the payment of the DIP Loan shall be subordinate and subject in right and time of payment to the payment in full of all SHS Allowed claims and all CSM Allowed claims; (c) if any payment on account of the DIP Loan not permitted to be made by the Debtors is made and received by the DIP Lender, such payment shall be held in trust by the DIP Lender for the benefit of SHS and shall be promptly paid over to SHS for application to any SHS Allowed claims; and (d) the DIP Lender shall not commence any Enforcement Actions against the Collateral without providing ninety (90) days advance written notice to SHS, provided however, that should SHS fail to commence its Enforcement Actions against the Collateral within said ninety (90) days, the DIP Lender shall have the right to proceed with its Enforcement Actions. The term "Enforcement Action" shall mean to take any action permissible under the provisions of Massachusetts or federal law to enforce, foreclose upon, take possession of or sell the Collateral.

6. Each of the DIP Liens granted to the DIP Lender pursuant to this order shall be deemed to be valid, perfected and enforceable without any necessity of the DIP Lender complying with any perfection or other requirements under any otherwise applicable state, federal or other non-bankruptcy law; provided that nothing shall prohibit the DIP Lender from filing such documents, in the DIP Lender's reasonable discretion, to evidence the DIP Liens.

7. All amounts owing by the Debtors under the DIP Loan will constitute super-priority administrative expense claims in the Chapter 11 Cases, subject to the limitation set forth in paragraph 4 of this Order (and any successor case under chapter 7 of the United States Bankruptcy Code) under section 364(c)(1) of the Bankruptcy Code, which claims shall be subject to approval by the Court on motion filed by the DIP Lender for allowance and payment of its administrative expense claims. The DIP Lender's administrative expense claims shall have priority over all unsecured pre-petition and post-petition liabilities, including any and all administrative expenses of the kind specified in sections 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1) and/or 726 of the Bankruptcy Code; provided however, the proceeds of the Debtors' claims and causes of action arising under chapter 5 of the Bankruptcy Code shall not be subject to such super-priority administrative claim.

8. Any amounts advanced by the DIP Lender pursuant to this order are advanced in "good faith" as that term is defined by Section 364(e) of the Bankruptcy Code.

9. The Court has not been asked to find, and it does not find, that any asserted pre-petition mortgage, lien or security interest is valid or perfected. Nothing contained in this order is intended, or shall be deemed, to be a ruling on the extent or validity of any creditor's asserted pre-petition security interest, lien or claim, and all parties' rights, claims and defenses with respect thereto are fully preserved.

10. The provisions of this order shall be binding upon and inure to the benefit of the DIP Lender, the City, SHS, CSM, the Debtors, and their respective successors and assigns.

11. The Court shall retain jurisdiction to enforce this order and to determine any disputes arising from or related to this order.

12. In the event of default under the DIP Loan, the DIP Lender may immediately stop advancing under the DIP Loan without further notice and shall have the right to request from this Court an emergency hearing, on three (3) business days' notice, to seek relief from the automatic stay including, without limitation, for the purposes of exercising any or all rights and remedies available under the DIP Liens and any other relief this Court determines to be just and proper; provided, however, that if the automatic stay is no longer in effect as to the DIP Lender, the DIP Lender may, subject to the terms of this order (including without limitation paragraph 5 of this order), exercise all such rights and remedies without further order of the Bankruptcy Court.

13. Subject to the terms of this order, the Debtors are authorized and directed to perform all acts required under or in connection this order, including, without limitation, to pay to the DIP Lender of amounts under the DIP Loan as and when due, subject to a further order of this Court for use of SHS' cash collateral, and to execute and deliver to the DIP Lender mortgages and any other documents, instruments and agreements that the DIP Lender reasonably determines to be necessary or appropriate in connection with the DIP Loan which shall be prepared by the DIP Lender.

14. The provisions of this order, including the grant of claims and Liens to or for the benefit of the DIP Lender, and any actions taken pursuant hereto shall survive the entry of any

order converting the Chapter 11 Cases to a case under chapter 7 of the Code or dismissing the Chapter 11 Cases.

15. The provisions of this order and any and all rights, remedies, privileges and benefits in favor of the DIP Lender in this order shall be effective immediately upon entry of this order, and the stay provided for in Rule 6004(h) is hereby waived.

Dated: March 30, 2023

By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge